798 F.2d 426
 Earnest Lee MILLER, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Florida Department of
Offender Rehabilitation; Richard Dugger, Superintendent
Florida State Prison, Starke, Florida; and Jim Smith,
Attorney General of the State of Florida, Respondents-Appellees.
William Riley JENT, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary Florida Department of
Offender Rehabilitation; Charles G. Strickland, Jr.,
Superintendent of Florida State Prison, Starke, Florida;
and Jim Smith, Attorney General of the State of Florida,
Respondents- Appellees.
 Nos. 85-3175, 85-3185.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 14, 1986.
Rehearing Denied Sept. 26. 1986.
 
 Howardene Garrett, Tampa, Fla., Deborah D. Kennedy and David L. Roll, Washington, D.C., for Earnest Lee Miller.
 William I. Munsey, Jr., and Davis G. Anderson, Jr., Asst. Attys. Gen., for respondents-appellees in No. 85-3175.
 Eleanor Jackson Piel, New York City, for William Riley Jent.
 Michael M. Kotler, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees in No. 85-3185.
 Appeals from the United States District Court for the Middle District of Florida.
 CORRECTED OPINION
 Before RONEY, FAY and JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioners William Riley Jent and Earnest Lee Miller appeal from the district court's denial of their habeas corpus petitions challenging their state convictions and death sentences for first degree murder. These cases are complicated because of the existence of continuing collateral activities and proceedings in both the state courts, and the federal district court in which these petitions were heard. To consider and finally rule upon all issues raised on these appeals would apparently not finally resolve the question of whether petitioners' death sentences are constitutionally faulty, but would amount to nothing more than the kind of piecemeal litigation which the judicial system tries to avoid. As a matter of fact, a motion was filed with this Court asking that the Jent appeal be abated until either the appeal is mooted by the grant of relief by either the state or district court on other points not asserted on the appeal, or an appeal from a denial of those other claims can be consolidated with this appeal. Since oral argument, the Court notes that some of the witnesses have allegedly recanted their testimony,[1] the prosecutor's investigation files have been opened by a court order,[2] and the state has now conceded the identity of the victim which was an issue at the time of their petitions.[3] Although none of this is in the record of these cases, it does not seem inappropriate for this Court to recognize that there can be no finality in a decision based on what is officially before it.
 
 
 2
 These cases have been fully briefed and argued, however, and it is clear to us that the district court used the wrong legal standard in considering three different claims. As a matter of judicial efficiency, therefore, it seems appropriate for us to point these matters out to the district court, and remand these cases for reconsideration under the correct standards. All the other issues will then be back before the district court for reconsideration in the event that becomes appropriate in light of the new activity that is taking place in these cases. In doing this, we make no suggestion as to how this Court might rule on the other issues presented on these appeals. If the cases come back on appeal, either by the state or the petitioners, all issues presented to the federal forum can be considered at once with some hope of finality.
 
 
 3
 Since this opinion will be useful only to counsel and the district court, all of whom are thoroughly familiar with the facts and the prior legal proceedings in these cases, it is unnecessary here to recite any matters other than those upon which we are ruling.
 
 
 4
 First, both Miller and Jent claimed ineffective assistance of counsel.[4] The state trial court held evidentiary hearings on these issues. The Florida Supreme Court affirmed the trial court's denial of relief. Jent v. State, 435 So.2d 809, 810-13 (Fla.1983) (attaching the trial court's order denying relief as an appendix to the opinion); Miller v. State, 435 So.2d 813, 814 (Fla.1983). The federal district court, in reviewing the ineffective assistance of counsel claims in separate opinions for Jent and Miller, accorded the state court's decision a presumption of correctness. In both cases the court stated:
 
 
 5
 Where, as in the instant ineffective assistance of counsel claims, there has been a full evidentiary hearing on the merits of the claim, there is a presumption of correctness to the state court's findings. See 28 U.S.C. Sec. 2254(d); Sumner v. Mata, 449 U.S. 539 [101 S.Ct. 764, 66 L.Ed.2d 722] (1981). That presumption can only be rebutted if the petitioner establishes one of seven exceptions to section 2254(d) or if the Court's independent review of the record leads it to conclude that the record when considered as a whole does not fairly support the state court's findings.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 In order to overcome that presumption, the petitioner must establish that the state court's findings are 'not fairly supported by the record.' 28 U.S.C. Sec. 2254(d)(8). Under Sec. 2254(d), however, state court findings are entitled to a high measure of deference and '[t]his deference requires that a federal habeas court must more than simply disagree with the state court before rejecting its factual determinations.' Marshall v. Lonberger, [459 U.S. 422], 103 S.Ct. 843, 850 [74 L.Ed.2d 646] (1983). Rather, a federal habeas court must defer to state court findings in the absence of convincing evidence to the contrary. Rushen v. Spain, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).
 
 
 9
 Miller v. Wainwright--Case No. 83-849-Civ-T-13, slip op. at 18 & 20 (M.D.Fla. April 30, 1984); Jent v. Wainwright, Case No. 83-860-Civ-T-13, slip op. at 29 & 31 (M.D.Fla. April 30, 1984).
 
 
 10
 This was an incorrect standard, and contrary to the now accepted standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), where it said:
 
 
 11
 ... in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. Sec. 2254(d). Ineffectiveness is not a question of 'basic, primary, or historical fac[t],' Townsend v. Sain, 372 U.S. 293, 309, n. 6 [83 S.Ct. 745, 755, n. 6, 9 L.Ed.2d 770] (1963). Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. See Cuyler v. Sullivan, 446 U.S. , at 342 [100 S.Ct. 1708 at 1714, 64 L.Ed.2d 333 (1980) ]. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of Sec. 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.
 
 
 12
 Id. at 698, 104 S.Ct. at 2070.
 
 
 13
 Although the state argues that the district court granted the presumption only as to the historical facts found by the state court, everything in the record before us shows that the district court accorded the presumption to the mixed law-fact question of ineffectiveness, and not just to the finding of historical facts, which would be entitled to the presumption. The ineffective assistance of counsel claims must be reexamined by the district court under the correct Strickland standard.
 
 
 14
 Second, both Miller and Jent attempted to obtain the grand jury testimony of witnesses who testified against them at their separate trials. Miller's case involved the grand jury testimony of two eyewitnesses to the crime, Carlena Jo Hubbard and Glenna Frye. Jent's case involved Hubbard and Frye, and a third eyewitness, Patricia Tirikaine.
 
 
 15
 To obtain grand jury testimony, a defendant must show a particularized need, sufficient to justify the revelation of generally secret grand jury proceedings. See Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966); United States v. Proctor & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). The district court held that the standard had not been met in this case because the witnesses were thoroughly cross-examined with prior deposition testimony contrary to their trial testimony. It is precisely because of this contradiction in the testimony that someone should look at the grand jury testimony to determine its usefulness to the defendants. Dennis, 384 U.S. at 872-73, 86 S.Ct. at 1850-51. The petitioners are not now asking that their convictions or sentences be set aside on the basis of this claim, but merely assert that some court should at least conduct an in camera review of the testimony to determine its relevance and usefulness to the defendant. Sometimes an in camera inspection of material is necessary to determine if a party has shown sufficient particularized need. The threshold showing for an in camera review is not as high as that needed to obtain the evidence. The district court incorrectly applied the higher test in its response to this claim.
 
 
 16
 If the grand jury testimony is the same as that at trial, it would obviously be of no use to the defendant. If it is the same as the deposition testimony, contrary to that at trial, it might or might not be useful, since the deposition was used at trial. If it were a third version, unlike either the trial or deposition, it strikes us that it would probably be useful to a jury in trying to sort out what is true and what is not. As the Supreme Court stated in Dennis, 384 U.S. at 873, 86 S.Ct. at 1851, under these type of circumstances, "it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked."
 
 
 17
 The state argues that a defendant has to establish what is in the grand jury testimony to avoid the rule that such testimony will not be revealed on pure speculation. That sets too high a threshold, however, when it appears clear that the testimony, under oath, is bound to differ from other testimony, given under oath. Dennis, 384 U.S. at 872-74, 86 S.Ct. at 1850-51; Proctor & Gamble, 356 U.S. at 683, 78 S.Ct. at 986; State of Wisconsin v. Schaffer, 565 F.2d 961, 966 (7th Cir.1977). Since the Court knows of two different versions under oath, it is quite apparent that the grand jury testimony cannot agree with both. This takes away the speculation as to the possible usefulness of the grand jury testimony. To ultimately decide the merits of the defendant's request, it is incumbent upon some court to review the grand jury testimony of the three testifying eyewitnesses to determine if the defendant has the particularized need sufficient to overcome the need for secrecy. Since neither the state or federal court has reviewed this evidence, the case must be remanded to the district court to consider the claim involving the grand jury testimony under the correct standard.
 
 
 18
 Third, we consider a claim relating to the sentencing of Miller. Miller claims the trial court excluded mitigating testimony concerning his rehabilitative capacity during the sentencing proceeding. In reviewing this claim, neither the state or district court had the benefit of the principle recently set forth in Skipper v. South Carolina, --- U.S. ----, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). At the Skipper sentencing hearing, at which the state sought and obtained the death penalty, the defendant attempted to introduce testimony of two jailers and one "regular visitor" to the jail to show that the defendant had "made a good adjustment" during his time spent in jail. The trial court refused to admit the testimony on the ground that it was irrelevant. Its decision was affirmed by the South Carolina Supreme Court. The United States Supreme Court reversed this decision, holding that the exclusion of this kind of testimony deprived Skipper of his right to place before the sentencer relevant evidence in mitigation of punishment. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
 
 
 19
 Although the state trial court limited the testimony of a court appointed psychologist, the Florida Supreme Court found no reversible error because the jury recommended life imprisonment. Miller v. State, 415 So.2d 1262, 1263 (Fla.1982), cert. denied, 459 U.S. 1158, 103 S.Ct. 802, 74 L.Ed.2d 1005 (1983). This decision misses the point of the claim. The state trial judge overrode the jury recommendation of life and sentenced Miller to death. The question is whether the trial judge considered evidence as to rehabilitation to be mitigating.
 
 
 20
 The federal district court in denying relief to Miller on this claim noted that although the trial judge arguably restricted the psychologist's testimony concerning rehabilitative capacity, an analysis of the totality of the testimony showed that the witness did in fact testify about Miller's rehabilitative capacity.
 
 
 21
 There is some question about this decision. In a post-trial affidavit, the doctor states that in accordance with the trial court's limiting instructions, he "refrained from touching upon any matter having to do with rehabilitative capacity." He states that, if permitted, he would have testified that (1) Miller has the intellect, motivation, and adaptive capabilities to be successfully rehabilitated, (2) the only requirement for furthering his rehabilitative capacities would be the development of a specially-tailored counseling program, (3) Miller has the family support and encouragement necessary for rehabilitation, and (4) Miller has an optimistic prognosis for rehabilitation. The doctor primarily testified about Miller's personality characteristics, particularly his tendency to take on the characteristics of the people around him. This testimony was given in an attempt to prove the mitigating factor that Miller had acted "under the substantial domination of another person" in committing the murder. Fla.Stat.Ann. Sec. 921.141(6)(e).
 
 
 22
 Whether or not there was sufficient testimony as to rehabilitation, however, is not the consideration in not meeting the Skipper standard that should be applied in the case. The district court must determine whether the trial judge, in setting the death sentence, freely considered rehabilitation to be a mitigating factor. The fact that the trial court heard the testimony is not enough. The district court must determine whether he gave it the significance it was entitled to under Skipper.
 
 
 23
 The judgments denying habeas corpus relief are vacated and the cases are remanded to the district court for reconsideration of these three issues under the correct standards. It may now be that further information being developed in this case will be relevant to these issues. The district court is, of course, free to consider any other claims that have been made or will be made in light of the ongoing proceedings in state and federal court, including the issue of whether any additional evidentiary hearings are needed.
 
 
 24
 VACATED and REMANDED.
 
 
 
 [1]
 St. Petersburg Times, August 1, 1986
 
 
 [2]
 The Tribune Co., Mary Jo Melone, Times Publishing Co., and William Riley Jent v. In re: Public Records, 493 So.2d 480, 11 Fla.L.W. 1533 (Fla. 2d DCA, 1986)
 
 
 [3]
 St. Petersburg Times, August 1, 1986; The Tampa Tribune, August 1, 1986
 
 
 [4]
 Miller claimed that he was denied effective assistance of counsel because his counsel (1) failed to obtain a forensic pathology expert to rebut the state expert's testimony that the victim was alive when burned; (2) failed to renew the motion for appointment of an investigator; (3) failed to take reasonable preparatory steps for the purpose of adducing impeachment evidence needed to implement his trial strategy of attacking the credibility of the state's witnesses; and (4) failed to investigate alternative lines of defense
 Jent claimed that his counsel (1) failed to obtain a forensic expert in pathology to rebut the State expert's testimony that the victim was alive when burned; (2) failed to obtain a forensic expert to rebut the State expert's testimony that it was "highly likely" that the hair found near the crime scene belonged to Jent; (3) failed to secure an expert on drug use who would cast doubt on the credibility of the State's witnesses who had mental or drug-related problems; (4) failed to request court appointment of a second psychiatrist and make any inquiry into mitigating circumstances; (5) failed to object to the court's failure to define sexual battery as the underlying felony in the felony murder charge and failed to object to the mitigating factors instruction which allegedly limited the jury's consideration to only statutory mitigating factors; (6) failed to investigate and adequately cross-examine the State's witnesses; and (7) conflict of interest by his first defense counsel.