**Theodore Robert BUNDY,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary
Department of Corrections, State
of Florida, Respondent-Appellee.**

No. 86–5509.

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1987.

---

James E. Coleman, Jr., (Wilmer, Cutler & Pickering), Polly Nelson, Washington, D.C., John F. Evans, Holly R. Skolnick, Coral Gables, Fla., for petitioner-appellant.

Gregory Costas, Andrea Smith Hillyer, Asst. Atty. Gens., Tallahassee, Fla., for respondent-appellee.

Before GODBOLD, VANCE and JOHNSON, Circuit Judges.

Corrected February 5, 1987.

GODBOLD, Circuit Judge:

On January 15, 1978 two young women, residents of a sorority house at Florida State University, Tallahassee, Leon County, Florida, were brutally murdered. Two other young women residing in the house were beaten and within an hour another young woman residing in a house nearby was attacked; these three victims survived. On July 24, 1979 Theodore Robert Bundy, the petitioner, was convicted of the two murders, three counts of attempted first degree murder, and two counts of burglary. The trial judge imposed death sentences for the murder convictions. The facts are set out in the opinion of the Florida Supreme Court affirming Bundy's convictions and sentences in June 1984. *Bundy v. State*, 455 So.2d 330 (Fla.1984).[1]

Certiorari was denied by the United States Supreme Court on May 5, 1986. ——— U.S. ———, 106 S.Ct. 1958, 90 L.Ed.2d 366. On May 22, 1986 the Governor of Florida signed a death warrant providing that Bun-

---

1. Bundy is under death sentence for another murder committed in Lake City, Florida. Habeas corpus relief was denied by the United States District Court for the Middle District of Florida, and an appeal therefrom is pending before this court. *Bundy v. Wainwright*, 805 F.2d 948 (11th Cir.1986).

dy be executed before 12:00 noon on July 3, 1986. The execution was scheduled for 7:00 a.m. July 2. In June 1986 Bundy pursued collateral remedies available to him in the Florida state courts. These were finally exhausted on June 30, 1986 when the Florida Supreme Court affirmed the trial court's denial of Bundy's motions for collateral relief. 492 So.2d 1330.

Bundy's case was brought to the federal court system six and a half months ago. On June 30, 1986 he filed in the Southern District of Florida a federal habeas corpus petition (his first federal petition) some 172 pages in length and an application for a stay of execution.[2] The petition is over-extensive.[3] Accompanying the petition was a memorandum in support of the application for stay, of some 30 pages plus 17 pages of exhibits. Issues briefed at length in the memorandum were deprivation of a fair trial because of prejudicial publicity, denial of a full and fair hearing on competency to stand trial, and ineffectiveness of trial counsel.

No evidentiary hearing was held. The district judge heard oral arguments on July 1. The same day he orally announced that he would deny a stay and deny the writ; he stated his reasons and reserved the right to elaborate or expand them in a written order. He granted a stay until 7:00 a.m. on July 3, within the period of the death warrant, to permit Bundy to pursue appellate remedies. The district judge also granted a certificate of probable cause. He filed his written order on July 2. 651 F.Supp.

38. Later on July 2 the Eleventh Circuit stayed the execution and calendared the case for briefing and argument. Arguments were heard by this court October 23.

This case went astray in the district court in several respects. It was heard on oral argument on a motion to stay, and then dismissed on the merits, in a context of procedural uncertainty. The court's rulings embraced substantive errors to which the procedural uncertainty contributed. The district court erred in denying a stay of execution, and it erred in denying the petition and ordering it dismissed. The judgment of the district court must be reversed and the case remanded for orderly, careful and deliberate consideration of the constitutional issues that are involved.

## I. THE DISTRICT COURT BACKGROUND

Following the filing of the federal petition on June 30, the state, on July 1, filed a motion to dismiss the petition or to transfer it to the Northern District of Florida, asserting that the petition had been filed in the wrong district and that sole jurisdiction and venue lay in the Northern District. The same day the state also filed a reply to the application for stay of execution. Counsel appeared before the court on the morning of July 1 for oral argument. From 10:05 a.m. to 1:25 p.m. the court was concerned with housekeeping matters and the motion to dismiss or transfer (and with recesses). It denied the motion to dismiss

---

2. The petition alleged a number of constitutional violations including inadequacy of the state trial court's inquiry into competency to stand trial; denial of Bundy's choice of counsel; ineffective assistance of counsel at the guilt phase of trial, at the sentencing phase, at the competency hearing, on the motion for a new trial, and on mandatory appeal to the state supreme court; unconstitutional use of the testimony of an eyewitness who had been subjected to hypnosis by the state and denial of opportunity to effectively cross-examine that witness; denial of opportunity to challenge the impartiality of the grand jury; denial of fair trial because of prejudicial and disruptive intrusion of press; admission of bite-mark evidence that was unreliable as a matter of law; improper instruction to jury on flight as evidence of guilt; arbitrary imposition

of death penalty in Florida because imposed disproportionately on white defendants; improper exclusion of jurors because of views on death penalty; constitutionally deficient clemency determination procedure; and improper comment by the court on Bundy's exercise of his right not to testify.

3. It sets forth specific grounds for relief as required by Rule 2 of the 28 U.S.C. § 2254 Rules but goes more deeply into the facts than Rule 2's provision for "set[ting] forth in summary form the facts supporting each of the grounds thus specified." Moreover it is also a brief and argument, containing lengthy discussions of the law, citations of authority and argument that properly are the subject of a brief.

or transfer at 1:25 p.m. on the ground that it had both jurisdiction and venue.[4]

The court then announced that it would hear oral arguments on petitioner's application to stay execution. (Tr. of argument, p. 22). The court had not issued under 28 U.S.C. § 2243 a show cause order requiring the state to show cause why the writ should not be granted. No motion to dismiss by the state was pending; its only motion to dismiss had been its motion based on jurisdiction and venue, and this already had been denied. Thus, before the court were a motion to stay and the state's reply to that motion. No response to the petition had been filed, nor was any transcript or record of any state court proceeding, direct or collateral, before the court (except for a two-page opinion of the Florida Supreme Court entered June 30, 1986, which was attached as an exhibit to the state's reply to the motion to stay). The state's reply to the motion to stay contended that the stay should be denied because the petition and the documents attached to the reply (the June 30, 1986 Supreme Court opinion) demonstrated no likelihood that Bundy would prevail on the merits. The state did not contend that the habeas petition should be decided on the merits or that it should be dismissed.[5]

As the oral argument drew to a close counsel for Bundy pointed out to the court that the state record, more than 10,000 pages long, had not been lodged with the court but that counsel for the state had it in his car, to be filed with the court. (Tr. 50).

Following argument, the court, at approximately 4:45 p.m., orally announced its decision denying a stay of execution (ex-

cept for the one-day stay allowed to pursue appellate remedies) and dismissing the petition. The order of dismissal was the first indication given by the court that it considered that it had under submission anything other than a motion to stay.[6]

Court adjourned at 5:05 p.m. Thereafter, at approximately 5:37 p.m., the state filed the trial court record with the district court. The district court filed its written opinion and order the next day, July 2.[7] Therein it discussed the merits of the motion to stay and the merits of the petition. It denied the motion to stay, denied the petition for the writ, and ordered the petition dismissed.

## II. THE STRUCTURE FOR PLEADING HABEAS CORPUS CASES

The process of pleading in habeas corpus cases is governed generally by statutes and by the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. Under Rule 2 the petition "shall specify all the grounds for relief ... and shall set forth in summary form the facts supporting each of the grounds thus specified." Petitioner is not required by statute or Rules to attach to his petition or to file a state court record[8] in order to avoid a dismissal for facial insufficiency, although often in summarizing the facts a petitioner necessarily or as a matter of convenience may refer to state court proceedings and even attach extracts therefrom.

■ Under 28 U.S.C. § 2243 the court entertaining the application may either (1) grant the writ, or (2) issue an order directing the respondent to show cause why it should not be granted, or (3) it may sum-

---

**4.** These conclusions are not questioned by the state in this appeal.

**5.** The reply, however, relied upon grounds drawn from the state court record and contained a multitude of citations to that record. We discuss below the impropriety of the state's urging that the stay be denied because the petition was insufficient on its face to show likelihood of success while at the same time attempting to support that argument by reliance upon a record that it withheld from filing.

**6.** *See* n. 11, *infra.*

**7.** The district court's written order does not refer to or suggest that it relied upon the late-filed record.

**8.** We include in the term state court record the record of trial and collateral proceedings, including transcripts of testimony.

marily dismiss the petition for facial insufficiency under the proviso of § 2243, "unless it appears from the application that the applicant or person detained is not entitled thereto." The language of the proviso is developed more fully in Rule 4 of the § 2254 Rules: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

If the petition and exhibits do not of themselves require the judge to grant the writ, "and if they do not plainly show on their face that petitioner is not entitled to relief" [*i.e.*, not the subject of a summary dismissal], Rule 4 requires that "the judge shall order the respondent to file an answer or other pleading within the time fixed by the court or to take such other action as the judge deems appropriate." [9]

█ If the writ is neither granted nor the petition dismissed for facial insufficiency, the court must issue a show cause order. Rule 5 specifies what, in response to a show cause order, the respondent's answer shall embrace. It must respond to the allegations of the petition, and it must state whether the petitioner has exhausted state remedies, including post-conviction remedies. In addition:

> The answer shall indicate what transcripts (of pretrial, trial, sentencing, and post-conviction proceedings) are available, when they can be furnished, and also what proceedings have been recorded and not transcribed. There shall be attached to the answer such portions of the transcripts as the answering party deems relevant. The court on its own motion or upon request of the petitioner

may order that further portions of the existing transcripts be furnished or that certain portions of the non-transcribed proceedings be transcribed and furnished. If a transcript is neither available nor procurable, a narrative summary of the evidence may be submitted. If the petitioner appealed from the judgment of conviction or from an adverse judgment or order in a post-conviction proceeding, a copy of the petitioner's brief on appeal and of the opinion of the appellate court, if any, shall also be filed by the respondent with the answer.

Rule 5. The obligation to come forward with the state court record is squarely upon the respondent, not upon the petitioner. This makes common sense as well as legal sense—in some cases the petitioner has no copy of the state court proceedings, while the Rules recognize that generally the attorney general has access to them. Advisory Committee Note to Rule 5.

Assuming that the petition has passed scrutiny for facial sufficiency, then with petition and answer and state court transcript before the court, plus any state court appellate decisions and petitioner's state court appellate briefs, the habeas judge has before him the materials to proceed on the substantive issues. The judge may grant the writ without a hearing, deny the writ without a hearing, or order a hearing. If the record is incomplete, the court on its own motion or motion of petitioner may order it completed. Rule 5. If no transcript is available, a narrative summary may be furnished. *Id.*

By 28 U.S.C. § 2254(d) Congress has prescribed that a federal habeas court shall give a presumption of correctness to certain determinations made by a state court of competent jurisdiction. The material be-

---

**9.** Pursuant to the authority to "take such other action as the judge deems appropriate," the district judge can order the respondent to make a motion to dismiss based upon information that respondent supplies, such as showing that petitioner's claims already have been decided on the merits in a federal court, that petitioner has failed to exhaust state remedies, that petitioner is not in custody, or that a decision in the

matter is pending in state court. Advisory Committee Note to Rule 4. In such situations a dismissal on procedural grounds may avoid burdening the respondent with the necessity of filing an answer on the substantive merits of the petition. *Id.* The district judge did not enter such an order in this case and, as we have noted, no motion to dismiss was ever filed.

fore the habeas judge filed under Rule 5 may trigger this statutory presumption of correctness, and the presumption in some cases may permit a final ruling without a hearing. Possibly a petition itself can contain sufficient state court record materials that a court can correctly find, on the face alone (with any exhibits attached), that the § 2254(d) presumption applies and that it bars relief, and dismiss under Rule 4. This would be an unusual circumstance, and it did not exist here.

■■■■ Four prerequisites must exist before the § 2254 presumption of correctness arises. There must have been (lettered for convenience):

(a) a hearing on the merits of a factual issue,

(b) made by a state court of competent jurisdiction,

(c) in a proceeding to which the applicant and the state were parties,

(d) evidenced by a written finding, opinion, or other reliable and adequate written indicia.

If all of these prerequisites appear, written findings made by the state court on a factual issue are presumed to be correct *unless* the applicant shall establish or it shall otherwise appear, or the respondent shall admit:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

In short, there is no presumption of correctness until all four (lettered) conditions have been met and, even then, no presumption arises if any one of the eight numbered conditions is shown to exist.

### III. DISMISSAL OF THE PETITION IN THIS CASE

We cannot identify with certainty the district court's rationale for dismissing the petition. The confusion at the oral argument on the motion to stay was substantially contributed to by the state. In the district court and before this court on appeal the state's less-than-candid and misleading presentations are deeply disturbing. Litigants, the judicial system, and society at large are entitled to have habeas corpus cases, and especially death penalty cases, proceed promptly, effectively and fairly. Counsel for Florida and for other states in this circuit now work cooperatively and with high professional standards toward this end. But somehow this case went astray. The state did not ask that the petition be dismissed. It was not required to file an answer or file the state court record, and it filed neither. Yet its reply to the motion to stay relied extensively upon the record. The reply asserted that the petition facially demonstrated no likelihood of success on the merits (a prerequisite for a stay). Then it discussed some 14 issues, in at least five of which it expressly relied

in whole or in part on the state record. The reply contained more than 50 record citations. Moreover, during oral argument counsel for the state asserted that all claims had been procedurally defaulted (Tr. 45), a contention necessarily based upon the record. Counsel invoked the record at length in contending that petitioner had had a full and fair competency hearing (Tr. 47). In asserting that representation by defense counsel had been effective, counsel for the state outlined at length actions taken by defense counsel as described in the record. (*Id.*) In the next moment the court asked counsel for the state what the burden was upon the court, and counsel, changing direction 180 degrees, responded that it was to "look at *the papers that are filed* and just make a determination as to whether or not there is a likelihood of Petitioner prevailing on the merits of the claims he has advanced." (Tr. 48).

At first the district court appeared to be relying upon the record, though none had been filed, and then appeared to recede to a position that it was ruling on the face of the petition.[10] Following the court's oral announcement of its decision, counsel for petitioner expressed his concern about references the court had made to the petitioner's not having made information available to the court and inquired whether the court was referring to the fact that the record had not been filed. The court responded that it was referring to "what 2.254 [sic— 28 U.S.C. § 2254] permitted to be filed to assist the district court in reviewing the papers" before it. Counsel for petitioner pointed out (for the second time) that any obligation to lodge the record was on the state and that the court was, in effect, holding petitioner accountable for the state's not having filed it. (Tr. 63–64). The court then receded to a position that it had not intended to rule based upon the record but rather that the petition standing

alone did not meet the burden that was upon petitioner.

Thus we think it is likely that, despite the state's having dragged in the contents of a non-filed record, the court ultimately did intend to dismiss the petition for facial insufficiency under the power given it by the proviso to § 2243. But approximately 30 minutes after the court announced its decision the state filed the record it had withheld during the oral argument.

■ We turn then to whether exercise by the court of its power to dismiss for facial insufficiency was correct.[11] It was not. The judge did not limit himself to the petition. He expressly searched for sources outside the petition to add to what the petition told him. For example, he drew information from published opinions of the Supreme Court of Florida in Bundy's litigation, though not attached to the petition, and he accepted concessions made to him by counsel in oral argument. We accept that he could do both. But, with respect to both of these sources, he applied erroneous standards of law to the information that he found. We discuss this in detail below. Second, in ruling the petition insufficient on its face, the judge based his ruling in part on the fact that the petitioner had failed to supply him with supplemental information and materials other than the petition. (Tr. 59–60). This was a burden petitioner did not have so long as the petition was facially sufficient.

What happened can be seen in part through looking at the court's disposition of four "main" issues which the court, in its oral statement of reasons and its written order, addressed in the light of § 2254(d). These were (1) that testimony of a witness who previously had been hypnotized unconstitutionally hindered cross-examination and affected the presentation of direct testimony; (2) petitioner did not receive a full and fair inquiry into his com-

10. Though, as described below, it went off the face of the petition for grounds.

11. We pretermit discussion of whether the petitioner, told by the court to present his argu- ments on motion to stay, was entitled to some word or indication that the court was taking the case under submission for decision on whether the petition should be dismissed.

petence to stand trial; (3) petitioner was denied the right to effective assistance of counsel; and (4) petitioner was denied a fair trial. With respect to these issues as a group the district court made three significant holdings: (a) that petitioner had conceded that the four issues had been *considered* by the trial court and the Supreme Court of Florida; (b) that petitioner had failed to meet his burden of showing that these issues *had not been* fully and fairly litigated in state court; and (c) the application on its face *did not provide a sufficient showing that the court could make a reliable determination that plenary review was required.*

█ As to holding (a), whether an issue has been *considered* by state courts relates to exhaustion. It does not of itself establish that the issue was considered *and decided* in such manner that the four prerequisites of § 2254(d) were satisfied.

█ Holding (b) refers to § 2254(d)(8). There is no burden on a petitioner to *negate* that full and fair litigation occurred in the state courts until the four prerequisites to application of § 2254(d) have been established. They were not established in this instance.

█ As to holding (c), this language appears to be drawn from *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). It has no application to the sufficiency of pleading a habeas corpus case in the federal district court, a matter specifically governed by the § 2254 Rules. This is discussed below in section V.

█ In considering the specific issue of the post-hypnotic testimony of the witness Nita Neary, the court repeated the point that it had been "presented" to ["considered" by] a state court. See discussion of holding (a) above. Also it held that *in fact this issue had been fully and fairly*

*litigated* on the merits before the Supreme Court of Florida. Order p. 7. A state appellate court may be a "state court of competent jurisdiction" under the second prerequisite of § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Possibly a federal court might conclude on the basis of the Supreme Court opinion in Bundy's direct appeal, 445 So.2d at 339–43, that this issue was "fully and fairly litigated on the merits." We pretermit deciding this, however, since petitioner's briefs in that appeal were not before the district court and are not before us.[12] But even if the issue was "fully and fairly litigated," the § 2254(d) presumption would extend to only the historical facts found by the Supreme Court. Section 2254(d) establishes no presumption of correctness with respect to ultimate questions of law or to mixed questions of law and fact. The constitutionality of the admissibility of the post-hypnotic testimony of the witness Neary is a mixed law-fact issue. Whether a defendant's Sixth Amendment rights to confront and cross-examine witnesses have been abridged is a mixed question of law and fact. *See Chaney v. Lewis,* 801 F.2d 1191 (9th Cir.1986) (claim of improper restriction of right to cross-examine a prosecution witness is a mixed question of fact and law obligating the district court to obtain and examine the state court record); *Burns v. Clusen,* 798 F.2d 931, 941–42 (7th Cir.1986) (whether witness' "unavailability" violated defendant's confrontation right is a mixed question of law and fact); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984) ("the determination of whether the admission of the hearsay statements violated Haggin's Sixth Amendment right to confrontation is a question of law, which involves the application of legal principles to historical facts"). *Cf. Sumner v. Mata II,*

---

**12.** In *Darden v. Wainwright,* 725 F.2d 1526 at 1534 n. 8 (11th Cir.1984) (en banc) (Tjoflat, J., dissenting), Judge Tjoflat pointed out that, because the State of Florida had not filed with the federal court the briefs filed by the parties in the Supreme Court of Florida, the federal court had "no definitive means of determining whether petitioner's claims of error were based on federal or state law."

455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) ("the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254").

The district court fell into a similar series of errors with respect to Bundy's claim that he was denied a full and fair hearing on his competency to stand trial. The court relied upon a concession by counsel that the matter had been *litigated* before the trial court under Florida Rule 3.850 and before the Supreme Court of Florida as reflected in its June 30, 1986 opinion. As we have pointed out, a concession that a matter has been litigated in state court does not establish the prerequisites to § 2254(d). With respect to the Supreme Court's June 30 opinion, that court stated in a one-sentence holding: "Appellant's [competency to stand trial] contention is without merit because in fact there was a proper competency hearing." The Supreme Court made no findings to support this conclusion, and the district judge could not know what record was before the Supreme Court undergirding its conclusion. Moreover, whether a competency hearing is "proper" so as to meet the demands of our Constitution is a mixed question of law and fact that enjoys no § 2254(d) presumption.

With respect to ineffective assistance of counsel, the court recognized in its oral statement of reasons that this is a mixed question of law and fact that does not carry the § 2254(d) presumption of correctness. (Tr.56). *See Miller v. Wainwright*, 798 F.2d 426, 429 (11th Cir.1986). It held the petition insufficient, however, on two grounds. First, the decisions of counsel were strategy and thus could not be the subject of an ineffective counsel claim. The court cited a single example of what it considered to be strategy from paragraph 151 of the petition; this concerned one aspect of the sentencing phase of the case. But, among other alleged grounds of ineffective counsel, consuming some 35 pages of the petition, were failure

to make an adequate pretrial investigation, a peculiarly fact-based issue, and not always determinable even from the trial record; failure to "protect" a plea agreement that would have brought about a life sentence; failure to develop and present mitigating evidence at the penalty phase, including available expert testimony of mental disability, another fact-based issue; failure to adequately present a motion for new trial; and re to object to erroneous jury instructions. None of these claims is shown by the face of the petition to be tactical, and none has any apparent relationship to the single cited example from paragraph 151.

A second oral ground for denying relief on the ineffective counsel claims was that the petition made only general statements not supported by any information or materials provided to the court. As previously discussed, petitioner need only allege grounds and facts, which he did for all or substantially all of his ineffective counsel allegations, and he was not obliged to supplement his petition with other materials.

In its written order on the ineffective counsel issue, the court reiterated the finding of strategy based on paragraph 151. Also it added a new ground: that ineffectiveness of counsel had been litigated in the trial court, before the Supreme Court in 1984, before the trial court on a 3.850 petition, and again before the Supreme Court on June 30, 1986. The 1984 Supreme Court decision, and the trial court action it affirmed (denial of a new trial on ineffective counsel grounds), concerned only events at trial, "which the court had seen and heard itself." *See* 455 So.2d at 349. The ineffectiveness claims asserted in the present petition sweep far beyond that narrow range. As to the 3.850 petition in the trial court, the district judge had no way of knowing what was litigated in that proceeding because he had no record. The Supreme Court's June 30 one-sentence finding, that Bundy "has failed to show any deficiency of performance on the part of his trial counsel" is a mixed law-fact issue, it is unsupported by any factfindings or

record made known to the district court, and it does not touch upon the claim of ineffective performance by appellate counsel.

As to the fourth "main" issue, denial of a fair trial, we are not clear from the district court or the parties exactly what this embraces, whether limited to allegations of prejudicial publicity or sweeping more widely. This can be clarified on remand.

## IV. ISSUES IN ADDITION TO THE "MAIN" ISSUES

At least the following additional issues were specifically raised by the petition:

(1) denial of choice of counsel;

(2) denial of opportunity to challenge the impartiality of the grand jury;

(3) admission of bite-mark evidence;

(4) instruction to jury on flight as evidence of guilt;

(5) arbitrary imposition of death penalty because imposed disproportionately on whites;

(6) exclusion of jurors because of views on death penalty;

(7) constitutionally deficient clemency determination procedure; and

(8) improper comment on Bundy's choosing not to testify.

All of these other issues raised by the petition were summarily brushed aside.

In its written order the court said:

The Court notes that although counsel for the Petitioner did state to the Court that the Application and Petition aforementioned did contain additional points upon which the Petitioner relied, that at no time during argument before the Court did counsel for the Petitioner direct the Court's attention to any federal constitutional claims that either were or

were not previously presented for consideration to the Supreme Court of Florida other than the four (4) points aforementioned which counsel for the Petitioner concedes are the crucial points.

 This sounds like waiver. Petitioner, in order to have the claims in his petition survive dismissal, was not required to specifically restate them in an oral argument on motion to stay. Moreover, though he was not required to do so, at the beginning, midway, and at the end of his argument, counsel for petitioner pointed out that by discussing four claims that best seemed to support a stay, he was not waiving any other claims.

Later, at p. 12 of its order, the court said:

Regarding the remaining issues contained in the Petition for Writ of Habeas Corpus which have not been specifically addressed herein and to which counsel for the Petitioner has not specifically directed this Court's attention, the Court finds that the Petition on its face regarding those points fails to meet the burdens enunciated above.

Presumably the burdens referred to are those previously discussed and erroneously placed on petitioner through a misconception of the operation of § 2254(d) or misconception of the effect of "presentation" of an issue in state court.[13]

## V. DENIAL OF A STAY

In deciding whether it would grant a stay the court, both orally and in writing, relied upon language from *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). *Barefoot* addressed the handling of requests for stays of execution in death sentence habeas corpus cases in the courts of appeal and in the Supreme Court of the United States. The parties in

---

**13.** We comment briefly on the state's presentation on appeal. It asks us to affirm the district court's ruling that Bundy had a full and fair competency hearing and its finding that petitioner was tried by persons not tainted by trial publicity on the basis of what the state court record shows. The place to make that contention and file the record to support it was in the district court. The state urges the application of § 2254(d) presumptions without addressing whether the prerequisites for that section have been established or whether the subject matters involved are factual or are mixed questions of law and fact, and it attempts to fasten upon petitioner the burden of negating a full and fair consideration in state court without discussing how the prerequisites of § 2254(d) can be met without a record.

that case were directed to brief and argue this question:

The appropriate standard for granting or denying a stay of execution pending disposition of an appeal by a federal court of appeals by a death-sentenced federal habeas corpus petitioner, and also the issues on appeal before the United States Court of Appeals for the Fifth Circuit.

*Id.* at 887, 103 S.Ct. at 3391, 77 L.Ed.2d at 1100. Certiorari had been granted "to determine whether the Court of Appeals erred in refusing to stay petitioner's death sentence." *Id.* at 888, 103 S.Ct. at 3392.

The Supreme Court discussed the duty of a court of appeals to hear the merits and the power of the court of appeals to adopt summary procedures. *Id.* at 889, 103 S.Ct. at 3392. The court sustained the procedures that had been followed by the court of appeals in *Barefoot* in considering his application for a stay, as being within the bounds of the Supreme Court's prior decisions. *Id.* at 890, 103 S.Ct. at 3393. The Court went on, however, to suggest guidelines for the development of proper procedures by the courts of appeals for fair and effective consideration of stays of execution in death penalty cases. *Id.* at 892, 103 S.Ct. at 3394. The suggested guidelines deal almost entirely with appeals and what courts of appeals may do. The fifth guideline, *id.* at 895–96, 103 S.Ct. at 3395–96, concerns stays pending application for a writ of certiorari from the Supreme Court to a court of appeals. It is from this section of the opinion that the district court extracted and utilized the following language in the present case:

Applications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted.

*Id.* at 896, 103 S.Ct. at 3396. But the Supreme Court followed the extracted language with additional language:

A stay of execution should first be sought from the court of appeals, and this Court generally places considerable weight on the decision reached by the courts of appeals in these circumstances.

*Id.* In short, this "guideline" speaks to what the Supreme Court expects to be filed with it to enable it to assess the merits, decide whether plenary review is required, and rule on a stay.

■■■ The quoted language does not establish criteria for a district court to use in considering whether it will grant a stay of execution. As the district court recognized elsewhere in its order in this case, in considering whether it should grant a stay under 28 U.S.C. § 2251 in a state habeas case, it must apply a four-part test: whether the movant has made a showing of likelihood of success on the merits and of irreparable injury if the stay is not granted, whether the stay would substantially harm other parties, and whether granting the stay would serve the public interest.

Nothing in *Barefoot* suggests that the Supreme Court intended to, if indeed it could, alter the pleading obligations set out for habeas cases in the federal district courts by the § 2254 Rules. In the district court a petitioner need only set out his grounds and allege facts. Rule 2. If the case does not proceed to answer, and if the grounds and facts alleged meet the criteria for a stay, petitioner is entitled to a stay. He cannot be denied a stay on the ground that he has not furnished additional information and materials that the Rules do not require of him. If an answer and state court record have been filed, then whether a request for a stay meets the familiar four-part test may depend upon everything that is before the court—petition, answer, record, and § 2254(d) presumptions (to the extent the requirements of that section have been met).

■■■ We do not imply in even the slightest degree that Bundy is entitled to succeed on the merits of any of his claims. But, without analyzing all of his numerous claims, the petition demonstrates a likelihood of success in at least some respects sufficient to justify a stay. These include permitting the testimony of the only eyewitness after she had been hypnotized.

The Florida Supreme Court held this testimony was admissible. 455 So.2d at 339–43. Eight months later in Bundy's separate appeal arising out of the Lake City murder, the same court held that hypnotically refreshed testimony was per se inadmissible in Florida but that its decision was to be prospective only. It may be that these two cases can be distinguished. But the interplay between them, and the constitutional implications of the two cases, raise serious questions that can be neither ignored nor brushed aside.

Another serious question is raised by the state court determination of Bundy's competency to stand trial. The petition alleges the following. Defense counsel obtained an order of the court appointing an expert to examine Bundy with respect to his mental competency. The expert's report at least raised a question whether Bundy was competent to stand trial. The state moved to have a hearing on the matter because of the possible doubt created by the expert's report, and a hearing was ordered. Bundy, apparently dissatisfied with his lawyer because he had raised a question of his competency, secured an appointed lawyer for purposes of the hearing, and both Bundy and the new lawyer joined the state in contending at the hearing that Bundy was competent. The hearing judge remarked that he was in the unusual position of entering a ruling on which all parties agreed. Bundy's former lawyer was present and prepared to testify that in his opinion Bundy was not competent. He was not called as a witness. No one participating in the hearing adequately developed in an adversary manner the issue of whether Bundy was competent, which was what the hearing was all about. Obviously it is not an answer to questions raised concerning the constitutional adequacy of the hearing that Bundy did not wish to be found incompetent—if in fact he was incompetent, he was not competent to make such a decision.

## CONCLUSION

The judgment of the district court is REVERSED and the case REMANDED to that court for proper consideration.