639 So.2d 597 (1994)
Michael Scott KEEN, Appellant,
v.
STATE of Florida, Appellee.
No. 71358.
Supreme Court of Florida.
May 5, 1994.
Rehearing Denied July 14, 1994.
*598 Richard L. Jorandby, Public Defender, and Richard B. Greene, Eric M. Cumfer and Jeffrey L. Anderson, Asst. Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Giselle D. Lylen, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Michael Scott Keen appeals his first-degree murder conviction and his death sentence. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
Keen was convicted on retrial for killing his wife, Anita Lopez Keen. The jury recommended death by a seven-to-five vote. The trial judge followed the jury's recommendation and sentenced Keen to death. We reverse both the conviction and the death sentence. We cannot say beyond a reasonable doubt that the presence of an unauthorized magazine article in the jury room did not prejudice jurors. The trial judge exacerbated this error by questioning jurors about their thought processes during guilt-phase deliberations. In addition, it was error not to disclose or conduct an in-camera inspection of a key witness's grand jury testimony.
The facts of this case are set out fully in our opinion after Keen's first trial. See Keen v. State, 504 So.2d 396 (Fla. 1987). The relevant facts are that Keen met the victim, Anita Lopez, in 1980. He took out two insurance policies, each insuring Anita Lopez's life for $50,000, in June 1981. Both policies had a double indemnity provision in case of accidental death and named Keen as the beneficiary.
Keen and Anita Lopez were married on August 1, 1981. On November 15, 1981, Keen, Anita, and a friend, Ken Shapiro, were aboard Keen's boat about fifteen to eighteen miles off shore. Shapiro testified that Keen pushed Anita into the water. Once the boat was out of Anita's swimming range, Keen circled Anita for more than an hour. Keen and Shapiro lost sight of Anita as daylight faded.
When Keen and Shapiro returned to shore after dark, Shapiro reported Anita missing. Police arrested Keen in August 1984 after Shapiro told Broward County Sheriff's detectives a different version than what he initially told authorities.
Keen testified that Shapiro pushed Anita and him into the water. He said he swam back to the boat and looked for Anita for several hours, but could not find her.
The jury found Keen guilty of first-degree murder. Keen raises twenty-three issues stemming from the guilt phase of the trial.[1] The first two issues merit reversal.
*599 First, the trial court erred in denying Keen's motion for mistrial after the court questioned two jurors about an unauthorized publication they read in the jury room during deliberations on guilt. After the jury returned its penalty recommendation, but before sentencing, defense counsel called to the trial court's attention the fact that a magazine article[2] had been discovered in the jury room after the jury's penalty-phase recommendation. The trial court reconvened the jury and questioned the jurors individually about whether they had seen the article or discussed it with other jurors. Two jurors admitted reading the article during guilt-phase deliberations. One juror also said he underlined and bracketed the portions he found interesting. In response to the trial court's questioning, both jurors said the article did not influence their decisions. The trial court denied the defense motion for a mistrial, finding that the jurors' answers to its questions showed that the article did not influence the verdict.
A defendant has a right "to have the jury deliberate free from distractions and outside influences." Livingston v. State, 458 So.2d 235, 237 (Fla. 1984). In State v. Hamilton, 574 So.2d 124 (Fla. 1991), this Court addressed whether a jury's recommendation during the penalty phase must be set aside because there were unauthorized publications in the jury room during deliberations. This Court adopted the harmless error test and held that "`defendants are entitled to a new trial unless it can be said that there is no reasonable possibility that the [unauthorized] books affected the verdict.'" Id. at 129 (quoting Paz v. United States, 462 F.2d 740, 745 (5th Cir.1972)). The government has the burden of showing that the error was harmless. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
The magazine article concerned tactics of defense attorneys who demeaned a victim's character and made personal attacks on the prosecutors. Although the record here does not reflect similar conduct of victim humiliation or personal attack on the prosecutors, the article was relevant because it dealt with criminal cases and the tactics of defense lawyers. One of the jurors underlined some portions of the article and bracketed others, indicating that some emphasis had been placed on the article. We cannot say beyond a reasonable doubt that the article did not influence jurors in some way.
In addition, the trial judge compounded the error when she questioned jurors about the article. Although it was appropriate to conduct a hearing, the trial court should not have asked two jurors how the article affected their decision-making process. See § 90.607(2)(b), Fla. Stat. (1987).[3]
*600 In Hamilton we held that the trial court must not inquire into a juror's thought process to determine whether the error is harmless. Rather, the trial court's inquiry "must be limited to objective demonstration of extrinsic factual matter disclosed in the jury room." 574 So.2d at 129 (quoting United States v. Howard, 506 F.2d 865, 869 (5th Cir.1975)).
There is no doubt from the record that the trial court inquired into jurors' thought processes and made its decision based on the inappropriate inquiry. We cannot say beyond a reasonable doubt that the error was harmless. See DiGuilio, 491 So.2d at 1139. Thus, Keen's conviction must be reversed.
Second, we find that the trial court erred in failing to conduct an in-camera inspection of the testimony. Keen argues that because Shapiro had previously given a sworn statement to the police exculpating Keen, which was inconsistent with Shapiro's later statements indicating that Keen murdered his wife, the trial court should at least conduct an in-camera inspection of Shapiro's grand jury testimony. We agree.
We have previously held that there is no pretrial right to inspect grand jury testimony as an aid in preparing a defense. Jent v. State, 408 So.2d 1024, 1027 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). To obtain grand jury testimony, a party must show a particularized need sufficient to justify the revelation of the generally secret grand jury proceedings. See Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966). Once a grand jury investigation ends, disclosure is proper when justice requires it. Id. at 870, 86 S.Ct. at 1849.
To determine whether a defendant has shown the particularized need that Dennis requires, the trial court has the discretion to conduct an in-camera inspection of the grand jury testimony. Miller v. Wainwright, 798 F.2d 426 (11th Cir.1986), vacated and remanded, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 513, reinstated, 820 F.2d 1135 (11th Cir.1987). In Miller the court addressed whether a trial court should conduct an in-camera inspection of the grand jury proceedings where two eyewitnesses to a crime gave contradictory testimony at a deposition and at trial. The Miller court rejected the trial court's ruling that the standard for review of the grand jury testimony had not been met because the defense cross-examined the witnesses with their prior deposition testimony. The court stated that "[i]t is precisely because of this contradiction in the testimony that someone should look at the grand jury testimony to determine its usefulness to the defendants." Id. at 429. The threshold standard for an in-camera inspection is lower than the showing needed to obtain a release of the grand jury testimony. Id.
We find that the trial court erred by failing, at a minimum, to conduct an in-camera inspection of the testimony.[4] The Dennis Court identified factors that justify the release of grand jury testimony. See 384 U.S. at 872-73, 86 S.Ct. at 1850-51. Some of those circumstances apply here to show a particularized need for the grand jury testimony: Shapiro was the key witness against Keen;[5] Shapiro was the only eyewitness to Anita's death, yet he gave conflicting statements to police about her death; and a number of years passed between Shapiro's original account and his testimony on retrial.[6] Accordingly, we find that this issue merits reversal.
*601 Keen raises seventeen penalty-phase issues,[7] which are moot because of our decision on the guilt-phase issues.
We reverse Keen's conviction for first-degree murder of Anita Lopez Keen and his death sentence. We remand for a retrial.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW and KOGAN, JJ., concur.
HARDING, J., dissents with an opinion.
McDONALD, J., dissents.
HARDING, Justice, dissenting.
I dissent from the majority holding that the trial court erred in failing to grant a new trial because of unauthorized materials being found in the jury room. In my judgment the trial court made the proper inquiry as required by Paz v. United States, 462 F.2d 740, 745 (5th Cir.1972). In Paz the court stated:
Inquiry must be made into how the books reached the jury room; whether they were available to members of the jury and, if so, for how long; the extent, if any, to which they were seen, read, discussed and considered by members of the jury; and such other matters as may bear on the issue of the reasonable possibility of whether they affected the verdict.
Id. at 746. Although the trial court did make inappropriate inquiry into the thought processes of two jurors, the responses of all jurors to the remaining inquiry clearly indicates to me that there is no reasonable possibility that the unauthorized material affected the jury verdict. The jurors' responses overcame and rebutted any presumption of prejudice and demonstrated the harmlessness of the materials in the jury room. United States v. Howard, 506 F.2d 865, 869 (5th Cir.1975).
I would further find that the trial court did not abuse its discretion in refusing to grant the defendant's motion for release of grand jury testimony.
I would affirm Keen's conviction and sentence.
NOTES
[1] (1) Whether the trial court erred in failing to grant Keen's motion for mistrial because two jurors read unauthorized materials in the jury room; (2) whether the trial court erred in denying Keen's motion to allow an in-camera inspection of Shapiro's grand jury testimony; (3) whether the trial court erred in denying Keen's motion to suppress statements he gave after his arrest; (4) whether the trial judge committed fundamental error in making statements that allegedly cast doubt on the judge's impartiality; (5) whether the trial court erred in prohibiting Keen's cross-examination of police officers about the officers receiving discipline for misconduct in other investigations; (6) whether Keen is entitled to a discharge because the prosecutor intentionally caused his retrial; (7) whether the State of Florida has jurisdiction to prosecute this homicide; (8) whether Broward County was the proper venue for this trial; (9) whether the trial court erred in denying his motion for a change of venue; (10) whether the trial court erred in denying his motion for a new trial because the jury's verdict was contrary to the weight of the evidence; (11) whether the trial court erred in allowing the bailiff to give evidence to the jury outside the presence of the trial judge, defense counsel, and prosecutor; (12) whether the trial court erred in admitting testimony that Keen solicited Michael Hickey to murder Shapiro; (13) whether the trial court erred in admitting Shapiro's testimony that implied Keen threatened to kill Shapiro or Shapiro's grandparents; (14) whether the trial court erred in allowing Michael Hickey to testify that Keen had been involved in an attempt to kill Patrick Keen's wife; (15) whether the trial court erred in allowing alleged hearsay testimony of Patrick Keen; (16) whether the trial court erred in allowing the introduction of the essence of a prior consistent statement by Shapiro; (17) whether the trial court erred in allowing testimony about Keen's use of an alias at the time of his arrest; (18) whether the trial court erred in allowing Shapiro to testify that the police thought Keen's version of the facts was false; (19) whether the trial court erred in allowing testimony indicating Keen had been arrested pursuant to an arrest warrant; (20) whether the trial court erred in allowing repeated references to the victim's pregnant status at the time of the murder; (21) whether the trial court erred in allowing testimony that commented on Keen's exercise of his right to counsel; (22) whether the trial court erred in allowing a state attorney investigator to testify about a telephone number written on a envelope; and (23) whether the trial court erred in failing to grant Keen's motion for judgment of acquittal.

We note that Keen failed to give a contemporaneous objection in issues 14, 15, 16, 17, 18, 19, and 21, so those issues were not preserved for appeal. Floyd v. State, 569 So.2d 1225 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991).
[2] Richard Lacayo, Law: Whose Trial Is It Anyway? Defense Lawyers Raise Hackles by Attacking Victims and Prosecutors, Time, May 25, 1987, at 62.
[3] Section 90.607(2)(b), Florida Statutes (1987), provides:

Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment.
[4] The United States Supreme Court held in Dennis that the advocate, not a trial judge, should examine grand jury testimony to spot inconsistencies. 384 U.S. 855, 874-75, 86 S.Ct. 1840, 1851-52, 16 L.Ed.2d 973 (1966). The trial judge's function "is limited to deciding whether a case has been made for production and to supervise the process." Id. at 875, 86 S.Ct. at 1851-52.
[5] On direct appeal after Keen's first trial, we recognized that the "evidence against Keen ... was primarily based on the testimony of Ken Shapiro." Keen v. State, 504 So.2d 396, 397 (Fla. 1987).
[6] The events occurred in 1981, Shapiro gave inconsistent statements in 1981 and 1984, and he testified on retrial in 1987.
[7] (1) Whether the trial court erred in failing to give jury instructions for lesser included offenses; (2) whether the trial court gave inaccurate jury instructions on excusable homicide; (3) whether Keen's conviction must be reversed because of cumulative error; (4) whether Keen's death sentence is disproportionate; (5) whether the trial court erred when it failed to consider and find proposed mitigating circumstance; (6) whether the trial court misapprehended the mitigating effect of disparate treatment; (7) whether the trial court used the wrong standard of proof in rejecting the proposed mitigating circumstances; (8) whether the trial court used the wrong standard of proof in finding the aggravating circumstances; (9) whether the trial court relied on improper considerations and speculation in finding the aggravating circumstance of heinous, atrocious, or cruel; (10) whether the trial court improperly doubled its consideration of the aggravating circumstances of cold, calculated, and premeditated with the pecuniary gain; (11) whether the trial court erred in not instructing the jury on disparate treatment; (12) whether the trial court erred by failing to instruct the jury on the essential elements of the heinous, atrocious, or cruel aggravating circumstance; (13) whether the trial court improperly led the jury to believe that the jury had no responsibility for the death sentence in this case; (14) whether the trial court erred by telling the jury that six votes would be either a death or life recommendation; (15) whether the trial court erred by considering the presentencing investigation report; (16) whether the errors in sentencing proceeding require resentencing before a new judge and jury; and (17) whether Florida's death penalty statute is unconstitutional. We note that Keen did not preserve issues one and two.