## CERTAIN NAMED AND UNNAMED NON-CITIZEN CHILDREN AND THEIR PARENTS *v.* TEXAS

No. A–179.   Decided September 4, 1980

MR. JUSTICE POWELL, Circuit Justice.

This is an application to vacate an order of the United States Court of Appeals for the Fifth Circuit, staying, pending appeal, an injunction entered by the United States District Court for the Southern District of Texas. The District Court held that § 21.031 of the Texas Education Code (Supp. 1980), which prohibits the use of state funds to educate alien children who are not "legally admitted" to the United States, violates the Equal Protection Clause of the Fourteenth

Amendment.[1] The court enjoined state education officials from denying free public education to any child, otherwise eligible, due to the child's immigration status. The District Court denied the State of Texas' motion to stay its injunction, because the court found that a stay "would substantially harm the plaintiffs and would not serve the public interest." The Court of Appeals, upon subsequent motion of the State, stayed the injunction pending appeal without opinion.

Plaintiffs below, and applicants here, are a class of school-age, "undocumented" alien children, who have been denied a free public education by the operation of § 21.031, and their parents.[2] Precise calculation of the number of children in Texas encompassed by this description is impossible. The State estimates that there are 120,000 such children, but the District Court rejected this figure as "untenable" and accepted a more modest estimate of 20,000 children. These undocumented children have not been legally admitted to the United States through established channels of immigration. None, however, is presently the subject of deportation proceedings, and many, the District Court found, are not deportable under federal immigration laws. The District Court concluded that "the great majority of the undocumented children . . . are or will become permanent residents of this country."

This case came before the District Court as a result of a consolidation, by the Judicial Panel on Multidistrict Litigation, of lawsuits filed in all federal judicial districts in Texas against the State and state education officials challenging the validity of § 21.031. No other State has a similar statute. The court found that § 21.031 effectively denied an educa-

---

[1] Another Federal District Court in Texas had previously held that § 21.031 violates the Equal Protection Clause as applied to the Tyler Independent School District. *Doe* v. *Plyler*, 458 F. Supp. 569 (ED Tex. 1978), appeal pending, No. 78–3311 (CA5).

[2] The United States intervened on the side of plaintiffs below and has filed here a statement in support of the application to vacate the stay.

tion to the plaintiff children. Although they could attend school upon payment of tuition, the court further found that such payment is beyond the means of their families. It held that the Equal Protection Clause applies to all people residing in the United States, including unlawful aliens. It recognized that no precedent of this Court directly supports this ruling, and, therefore, relied on analogous rulings of this Court, see, *e. g., Mathews* v. *Diaz,* 426 U. S. 67, 77 (1976) (Due Process Clause of the Fifth Amendment applies to aliens unlawfully residing in the United States), and precedents in lower courts, see *Bolanos* v. *Kiley,* 509 F. 2d 1023, 1025 (CA2 1975) (dictum). In addition, the court found guidance in the language of the Equal Protection Clause, which extends protection to *persons* within a State's jurisdiction, and ruled that a state law which purports to act on any person residing within the State is subject to scrutiny under the Clause.

The District Court then determined that the Texas statute was subject to strict scrutiny because it impaired a fundamental right of access to existing public education. It sought to distinguish *San Antonio Independent School District* v. *Rodriguez,* 411 U. S. 1 (1973), which held that the Constitution does not protect a right to education, at least beyond training in the basic skills necessary for the exercise of other fundamental rights such as voting and free expression. *Id.,* at 29–39. The court observed that § 21.031 established a complete bar to any education for the plaintiff children, and thus raised the question reserved in *Rodriguez* of whether there is a fundamental right under the Constitution to minimal education. It stressed that an affirmative answer to this question would not involve the federal courts in overseeing the quality of education offered by the States, an involvement condemned in *Rodriguez.* Applying strict scrutiny, the court held the statute violative of the Equal Protection Clause because it was not justified by a compelling state interest. While not explicitly so holding, the court also implied that it would hold the statute unconstitutional even if it applied

rational-basis scrutiny or merely required that the law be substantially related to an important state interest.

## I

"The power of a Circuit Justice to dissolve a stay is well settled." *New York* v. *Kleppe,* 429 U. S. 1307, 1310 (1976) (MARSHALL, J., in chambers). See *Meredith* v. *Fair,* 83 S. Ct. 10, 9 L. Ed. 2d 43 (1962) (Black, J., in chambers). The well-established principles that guide a Circuit Justice in considering an application to stay a judgment entered below are equally applicable when considering an application to vacate a stay.

> "[T]here must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed." *Times-Picayune Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers).

When an application to vacate a stay is considered, this formulation must be modified, of course: there must be a significant possibility that a majority of the Court eventually will agree with the District Court's decision.

Respect for the judgment of the Court of Appeals dictates that the power to dissolve its stay, entered prior to adjudication of the merits, be exercised with restraint. A Circuit Justice should not disturb, "except upon the weightiest considerations, interim determinations of the Court of Appeals in matters pending before it." *O'Rourke* v. *Levine,* 80 S. Ct. 623, 624, 4 L. Ed. 2d 615, 616 (1960) (Harlan, J., in chambers). The reasons supporting this reluctance to overturn interim orders are plain: when a court of appeals has not yet ruled on the merits of a controversy, the vacation of an interim

order invades the normal responsibility of that court to provide for the orderly disposition of cases on its docket. Unless there is a reasonable probability that the case will eventually come before this Court for plenary consideration, a Circuit Justice's interference with an interim order of a court of appeals cannot be justified solely because he disagrees about the harm a party may suffer. The applicants, therefore, bear an augmented burden of showing both that the failure to vacate the stay probably will cause them irreparable harm and that the Court eventually either will grant certiorari or note probable jurisdiction.

This is the exceptional case where it appears, even before decision by the Court of Appeals, that there is a reasonable probability that this Court will grant certiorari or note probable jurisdiction. The District Court's holding that the Equal Protection Clause applied to unlawful aliens raises a difficult question of constitutional significance. It also involves a pressing national problem: the number of unlawful aliens residing in our country has risen dramatically. In more immediate terms, the case presents a challenge to the administration of Texas public schools of importance to the State's residents. The decision of the Court of Appeals may resolve satisfactorily the immediate question. But the overarching question of the application of the Equal Protection Clause to unlawful aliens appears likely to remain.

It is more difficult to say whether there is a significant probability that a majority of this Court eventually will agree with the District Court's decision. *Mathews* v. *Diaz* upheld the power of the Federal Government to make distinctions between classes of aliens in the provision of Medicare benefits against a claim that the classification violated the Due Process Clause. The Court's resolution of the case rested, however, on Congress' necessarily broad power over all aspects of immigration and naturalization, and we specifically stated that "equal protection analysis . . . involves significantly different considerations because it concerns the

relationship between aliens and the States rather than between aliens and the Federal Government." 426 U. S., at 84–85. The District Court relied explicitly on this distinction in holding that the Equal Protection Clause applies to the State's treatment of unlawful aliens. Likewise, as mentioned above, the court relied on a reservation in *San Antonio Independent School District* v. *Rodriguez, supra,* to find room for its holding that there is a constitutional right to a minimal level of free public education. Thus, while not finding direct support in our precedents, the court concluded that these holdings are consistent with established constitutional principles.

Although the question is close, it is not unreasonable to believe that five Members of the Court may agree with the decision of the District Court. This is not to suggest that I · have reached any decision on the merits of this case or that I think it more probable than not that we will agree with the District Court. Rather, it recognizes that the court's decision is reasoned, that it presents novel and important issues, and is supported by considerations that may be persuasive to the Court of Appeals or to this Court. Further, it may be possible to accept the District Court's decision without fully embracing the full sweep of its analysis.

## II

Applicants also have presented convincing arguments that they will suffer irreparable harm if the stay is not vacated. The District Court, having before it the voluminous evidence presented during trial, explicitly relied on the probable harm to plaintiffs in denying the State's motion to stay the injunction. Undocumented alien children have not been able to attend Texas public schools since the challenged statute was enacted in 1975. The harm caused these children by lack of education needs little elucidation. Not only are the children consigned to ignorance and illiteracy; they also are denied the benefits of association in the classroom with students and teachers of diverse backgrounds. Instead, most

of the children remain idle, or are subjected prematurely to physical toil, conditions that may lead to emotional and behavioral problems. These observations appear to be supported by findings about the condition of the children in question.

The State argues that the stay works minimal harm on applicants because they have been out of school for five years. Absence for the additional year needed to settle this controversy will not add further irreparable harm. It seems to me that this argument is meritless on its face. Expert testimony presented at trial indicates that delay in entering school will tend to exacerbate the deprivations already suffered and mitigate the efficacy of whatever relief eventually may be deemed appropriate.

The State does not argue that it or the Texas Education Agency will be harmed directly if the stay is vacated. The primary involvement of the State and the Agency is to provide state funds to local, independent school districts. See generally *San Antonio Independent School District* v. *Rodriguez*, 411 U. S., at 6–17. Nor does the State allege that it will be compelled to furnish additional funds for the upcoming school year. Rather, it submits that its total expenditure will be "diluted" by $70 per pupil by the addition of the new students. Certainly, this decrease in *per pupil* expenditure from a current figure of $1,200 is not *de minimis*. But the core of the State's argument is that the stay was necessary to avoid irreparable harm to the independent school districts. It contends that the influx of new Spanish-speaking students will strain the abilities of the districts to provide bilingual education, and thus cause the districts to violate existing or pending rules governing the provision of bilingual education. These legal difficulties seem speculative.

Perhaps the greater danger is that the quality of education in some districts would suffer during the coming year. The admission of numbers of illiterate, solely Spanish-speaking

children may tax the resources of a school district. The affidavits submitted to the Court of Appeals document the possibility of severe stress only in the Houston Independent School District.[3] Affidavits submitted by the applicants indicate, however, that many school districts are prepared to accept the undocumented children and do not foresee that their assimilation will unduly strain their abilities to provide a customary education to all their pupils.

Under these circumstances, I conclude that the balance of harms weighs heavily on the side of the children, certainly in those school districts where the ability of the local schools to provide education will not be threatened. I therefore will vacate the stay instituted by the Court of Appeals, which applies to all school districts within Texas. This order shall be without prejudice to the ability of an individual school district, or the State on its behalf, to apply for a stay of the District Court's injunction. If the district can demonstrate that, because of the number of undocumented alien children within its jurisdiction or because of exceptionally limited resources, the operation of the injunction would severely hamper the provision of education to all its students during the coming year, the granting of a stay would be justified.[4]

---

[3] The State argues here that serious difficulties can be expected in the Dallas and Brownsville School Districts as well.

[4] Applicants indicate that the District Court already has expressed a willingness to consider staying its injunction in those school districts that can demonstrate exceptional difficulty in admitting the children this fall.