Maxine Davidson **WHITE**, as next friend to Gary Heidnik, Petitioner,

v.

Martin **HORN**, Commissioner, Pennsylvania Department of Corrections, Gregory White, Superintendent of the State Correctional Institution at Rockview, and the Commonwealth of Pennsylvania, Respondent.

No. 97–2561.

United States District Court, E.D. Pennsylvania.

July 3, 1999.

---

*OPINION AND ORDER*

VAN ANTWERPEN, District Judge.

## I. INTRODUCTION

Petitioner, Maxine Davidson White, has alleged next friend standing on behalf of her father, Gary Heidnik, who is scheduled to be executed on July 6, 1999. On June 28, 1999, Petitioner filed an emergency Application for Stay of Execution pursuant to 28 U.S.C. § 2251. In conjunction with the request for a stay, Petitioner has also filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 claiming constitutional deficiencies during Mr. Heidnik's trial, sentencing and subsequent proceedings. The Commonwealth of Pennsylvania ("Commonwealth") has filed a Memorandum in Response to Third Party Application for Stay of Execution on June 30, 1999. For the following reasons, we deny both the stay and the habeas petition.

## II. FACTS AND PROCEDURAL HISTORY

This case has a long and complicated procedural history. On the basis of a series of heinous crimes committed by Mr. Heidnik, he was sentenced to death on March 2, 1989. During the pendency of his direct appeal, Mr. Heidnik first expressed a desire to have his attorney abandon his appeal. However, the Pennsylvania Supreme Court still engaged in the review of his conviction and affirmed his

sentences of death. *See Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991). Governor Ridge then signed a death warrant scheduled for April 15, 1997 which expired on April 19, 1997.

On April 11, 1997, a petition was filed by the Center for Legal Education, Advocacy & Defense Assistance (CLEADA) in the Pennsylvania Court of Common Pleas. Although Mr. Heidnik had expressed a desire not to challenge his sentence, CLEADA independently argued, without asserting next friend standing, that Mr. Heidnik was mentally incompetent to face execution. *See Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). After holding a competency hearing, the Court of Common Pleas orally denied the petition on April 14, 1997. *See* Tr. 4/14/97 at 143–45. On April 15, 1997, Judge Poserina of the Court of Common Pleas issued 38 detailed findings of fact and conclusions of law supporting his determination that Mr. Heidnik is competent to be executed under the *Ford* standard. *See* Findings of Fact 4/15/97. This decision was upheld by the Pennsylvania Supreme Court on August 19, 1998 and has not been disturbed. *See In re Heidnik,* 554 Pa. 177, 720 A.2d 1016 (1998)("*In re Heidnik II*").

Meanwhile, Ms. White, under next friend status, filed a motion in this court on April 15, 1997, seeking a stay of execution and an appointment of habeas corpus counsel under *McFarland v. Scott,* 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), and, if necessary, a grant of next friend standing. We held an emergency hearing for the purpose of determining the threshold issue of whether or not Ms. White could assert next friend standing. To determine Ms. White's claim, we examined whether Mr. Heidnik had given a knowing, intelligent and voluntary wavier of his right to proceed in federal court under the standard of *Whitmore v. Arkansas,* 495 U.S. 149, 162, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). On April 16, 1997, based on a thorough review of the entire record, we held that those seeking next friend standing had not met their burden of proof with regard to the incompetence of Mr. Heidnik. *See Heidnik v. Horn,* 960 F.Supp. 74 (E.D.Pa.).

Ms. White filed an appeal with the Third Circuit. On April 18, 1997, the Third Circuit issued a decision reversing our findings. *In re Heidnik,* 112 F.3d 105 (3d Cir.1997)("*In re Heidnik III* "). In particular, the Third Circuit held that under the standard elucidated by *Whitmore,* the evidence was insufficient to support a finding of Mr. Heidnik's competence, thereby qualifying Ms. White as a next friend. *Id.* at 112. The Third Circuit then vacated our order, remanding with directions to designate next friend status for Ms. White and enter a stay of execution. *Id.* at 112–113.

On remand the next day, April 18, 1997, we followed the directive of the Third Circuit, issuing a stay of execution and granting next friend status to Ms. White. *See* Order 4/18/97. That same day, the Commonwealth filed a petition with the United States Supreme Court requesting a vacation of our stay. That evening, the United States Supreme Court vacated our order staying the execution.[1] *See Horn v. White,* 520 U.S. 1183, 117 S.Ct. 1465, 137 L.Ed.2d 680 (1997).

Later on the evening of April 18, 1997, the Pennsylvania Supreme Court issued a Stay of Execution on the basis of the competency proceedings pending before it. More than one year later, the Pennsylvania Supreme Court ruled that it would adopt the federal *Whitmore* standard for next-friend standing on August 18, 1998. *See In re Heidnik II.*

Relying on the Pennsylvania Supreme Court's ruling, Ms. White, alleging next friend status, filed in state court a petition asserting habeas corpus relief under the

---

1. On April 19, 1997, the United States Supreme Court also denied the Commonwealth's application to vacate the stay of execution in Pennsylvania Supreme Court.

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9542 *et seq.*, on September 18, 1998. At the direction of the court and with the agreement of counsel for both sides, Mr. Heidnik was evaluated by four expert psychiatrists on January 29, 1999. The evaluation was to determine Mr. Heidnik's competency to waive his appeals so that Ms. White might qualify as a next friend. *See* Tr. 2/24/99; Tr. 3/1/99 at 3–4. The two-and-a-half hour evaluation was conducted by Dr. John O'Brien for the court, and was attended by Dr. Neil Blumberg for the petitioner, Dr. Lawson Bernstein for the petitioner, Dr. Robert Sadoff for the Commonwealth, and counsel for both sides. The experts were permitted to ask questions of Mr. Heidnik at the end of the evaluation, and all agreed that they had the opportunity to ask whatever questions they wished. *See, e.g.*, Tr. 3/1/99 at 24–27; Tr. 3/2/99 at 32.

The Court of Common Pleas then held an evidentiary hearing on the psychiatric condition of Mr. Heidnik. *See* Tr. 3/1/99; Tr. 3/2/99. On April 27, 1999, the Court of Common Pleas issued an oral decision with findings of fact that Mr. Heidnik was competent to knowingly waive his appellate rights under *Whitmore* and Ms. White had no standing to be Mr. Heidnik's next friend. Tr. 4/27/99 at 20–41 (Poserina, J., opinion). Ms. White's habeas post-conviction claims were subsequently dismissed.

On appeal to the Pennsylvania Supreme Court, Ms. White challenged the determination that Mr. Heidnik was competent by not only alleging that the lower court's findings were erroneous, but by also claiming its hearing was unfair.[2] The Pennsylvania Supreme Court rejected her challenge and affirmed the lower court's decision that Ms. White lacked standing to file a PCRA petition on Mr. Heidnik's behalf. *See Commonwealth of Pennsylvania v. White*, No. 268 Cap.App. Dkt., slip op. at 6 (Pa. Jun. 23, 1999) (per curiam). Reargument was denied by the Pennsylvania Supreme Court on July 1, 1999. After having exhausted her habeas post-conviction claims in state court, Ms. White now files a federal Petition with a request to stay execution in this court.[3]

On Wednesday, June 30, 1999, we held a hearing in open court at Easton, Pennsylvania, providing both sides the opportunity to argue before us. *See generally* Tr. 6/30/99. Mr. Billy Nolas spoke on behalf of Petitioner, and Mr. Ronald Eisenberg argued for the Commonwealth. The hearing lasted approximately two hours.

## III. DISCUSSION

■ We must consider whether Petitioner is entitled to a stay of execution. Pursuant to 28 U.S.C. § 2251, a federal judge "may … stay any proceeding against the person detained … under the authority of any State … for any matter involved in the habeas corpus proceeding." *Id.* A habeas petitioner need not show that he can succeed on the merits, but rather must merely make a substantial showing of a denial of a federal right and demonstrate that the issues are debatable among jurists of reason. *See Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). In other words, if the petition demonstrates "a likelihood of success" on the merits in at least some respects, a stay is appropriate. *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir.1987).

■ Before examining the merits of the application for a stay of execution, however, we must first address the threshold issue of whether the Petitioner, as alleged

---

2. Moreover, since on May 12, 1999, Governor Ridge rescheduled Mr. Heidnik's execution for July 6, 1999, Ms. White also filed a request for a stay of execution with her appeal to the Pennsylvania Supreme Court.

3. The Commonwealth complains that more than two years have passed since Petitioner was last before this court. Tr. 6/30/99 at 50–51. Petitioner's counsel stated at oral argument that they could not file sooner because exhaustion of issues was required in the state courts. *Id.* at 30–31, 71–72.

next friend of Mr. Heidnik, can demonstrate that she has standing to bring a habeas corpus petition on behalf of her father. Before granting a stay, "federal courts must make certain that an adequate basis exists for the exercise of federal power." *Demosthenes v. Baal,* 495 U.S. 731, 737, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); *see also Brewer v. Lewis,* 989 F.2d 1021, 1025–26 (9th Cir.1993); *In re Zettlemoyer,* 53 F.3d 24, 26 (3d Cir.1995). Such a threshold determination is significant because a grant of a stay is an exercise of judicial power which is unauthorized "on behalf of a party who has not first established standing." *Brewer,* 989 F.2d at 1025 (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *In re Zettlemoyer,* 53 F.3d at 26.

After an extensive review of the record, we find that Petitioner clearly does not have next friend standing. Until Petitioner can demonstrate that she has such standing to bring a Petition on behalf of her father, she may not obtain a stay of execution over the wishes of Mr. Heidnik. Otherwise, to proceed to examine the merits of the habeas petition and the application for a stay without a showing that Mr. Heidnik is unable to act on his own behalf would "circumvent the jurisdictional limits of Art. III simply by the mantle of 'next friend.'" *Whitmore,* 495 U.S. at 164, 110 S.Ct. 1717.

## A. Next Friend Standing Was Never Established

█ In her habeas petition and application for a stay filed in this court, Petitioner, Maxine Davidson White, has alleged next friend standing on behalf of Gary Heidnik. Petitioner argues that the issue of her standing has already been resolved in her favor by the Third Circuit's decision issued in this case on April 18, 1997. *See* Pet.'s Mem. at 4–5. At that time, the

Third Circuit held that Ms. White had next friend standing because there was insufficient evidence in the record to support a finding that Mr. Heidnik is competent. *See In re Heidnik III,* 112 F.3d at 112. Normally, this court would be bound by the Third Circuit decision under the law of the case doctrine. *See* Pet.'s Mem. at 5, 9–11; Tr. 6/30/99 at 77–78.

In light of the subsequent proceedings which have occurred in this case, however, we respectfully reject the Petitioner's assertion that we are bound by the Third Circuit's determination as to next friend standing. On April 18, 1997, we issued an order according to the Third Circuit's directive,[4] and later that same day, the United States Supreme Court vacated our order staying the execution of Mr. Heidnik. Since our stay was issued pursuant to the express directive of the Third Circuit, we must respectfully question the underlying rationale for that directive—that is, Ms. White's next friend standing and her *McFarland* petition.

Petitioner argues, however, that the United States Supreme Court, favoring comity, vacated the stay because the Court found it premature in light of the appeal and request for a stay pending before the Pennsylvania Supreme Court. *See* Pet.'s Mem. at 13; Tr. 6/30/99 at 9, 14–15. Petitioner explains that the limited language of the order vacating the stay, which lacks specific comment on the propriety of the Third Circuit's next friend standing ruling, signifies that the order was written in order to provide temporary deference until the state court proceedings were completed. *See* Pet.'s Mem. at 12; Tr. 6/30/99 at 19–20.

We reject this explanation as unfounded speculation on the part of the Petitioner. While at first glance such an explanation

---

4. Our order of April 18, 1997:(1) granted next friend status to Ms. White; (2) appointed counsel for Ms. White; (3) entered a stay of execution; (4) ordered relevant pages of the proceedings for the newly appointed counsel;

(5) amended the caption of the case. *See* Order 4/18/97; and (6) required that "the habeas corpus petition is to be filed with in a reasonable time."

might seem plausible, the fundamental fact is that when the United States Supreme Court vacated the stay of execution, there was nothing stopping Mr. Heidnik's execution from proceeding forward at that point. At the time the United States Supreme Court ruled, not only was no other stay of execution in place, see *Commonwealth of Pennsylvania v. Heidnik*, No. 50 E.D. Misc. Dkt., slip op. (Pa. Apr. 18, 1997)(vacating the stay of execution), but Mr. Heidnik's execution was imminent because his death warrant was still in effect. Furthermore, we have no reason to believe that the United States Supreme Court could have known that its order would eventually be mooted by the Pennsylvania Supreme Court's issuance of a stay of execution. See Tr. 6/30/99 at 53. In fact, if the Pennsylvania Supreme Court had instead denied or even delayed its stay of execution, the United States Supreme Court's order vacating the stay would have had full effect allowing Mr. Heidnik's execution to go forward.[5] We believe that, creative speculation aside, there is no way to avoid the basic fact that Mr. Heidnik imminently faced execution as a result of the United States Supreme Court's order vacating the federal stay. It necessarily follows that if the United States Supreme Court was allowing Mr. Heidnik to be executed, the underlying consideration must have been that no next friend standing exists to file his post-conviction claims. We find that for this reason, we agree with the Com-

monwealth that the stay and the issue of standing are inextricably linked in this case.[6] See Tr. 6/30/99 at 50, 55.

Petitioner also attempts to buttress her argument by asserting that federal law clearly states that a stay is merely a procedural mechanism which has no implications on the merits of a case. See Pet.'s Mem. at 13–16; Tr. 6/30/99 at 5–7, 23. We reject this argument because we find that, under the unique circumstances of the present death penalty litigation, a ruling on a stay of execution can have substantive implications. For that reason, we find the non-death penalty cases cited by the Petitioner to be inapplicable. See, e.g., *Named & Unnamed Children v. Texas*, 448 U.S. 1327, 1330, 101 S.Ct. 12, 65 L.Ed.2d 1151 (1980); *Lawrence v. Chater*, 516 U.S. 163, 168, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996); see also Pet.'s Mem. at 13.

As we have discussed above, the case at bar demonstrates that when an existing stay of execution is vacated and the execution is allowed to proceed, it forecloses further litigation on the merits. We find, therefore, that cases where the United States Supreme Court either granted a stay of execution or affirmed an existing stay of execution are distinguished because no possibility of imminent execution exists in those cases. In fact, we agree with the Petitioner that rulings which result in staying executions may very well be procedural rather than a ruling on the merits. See, e.g., *Franklin v. Francis*, 144 F.3d

---

**5.** The Petitioner argues that if this scenario had occurred, then the United States Supreme Court would have reversed its original order vacating the stay of execution. See Tr. 6/30/99 at 9. This is of course also speculation. Furthermore, it seems rather strange to us that Petitioner argues the importance of comity to the United States Supreme Court, but then claims that such deference only extends to the Pennsylvania Supreme Court when it rules in favor of the Petitioner, i.e., by issuing a stay of execution.

**6.** We also reject Petitioner's claim that the reasoning in *Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir.1987), applies to this case. See Tr. 6/30/99 at 25–27. In *Burkett*, the court found the district court's decision to grant a

petitioner relief persuasive because, among other reasons, a party had failed to challenge the decision and did not attempt to appeal the district's court order. *Burkett*, 826 F.2d at 1223. Here, the Commonwealth did not need to appeal the decision of the United States Supreme Court because it correctly assumed that the Supreme Court's order vacating the stay of execution implicitly denied the propriety of next friend standing in its favor. As we believe the Supreme Court expressed that Mr. Heidnik's execution could proceed through its order vacating the stay, we find it comprehensible that the Commonwealth did not feel the need to further appeal for a ruling on the Third Circuit's decision.

429 (6th Cir.1998); *Carr v. Georgia,* 521 U.S. 1141, 118 S.Ct. 17, 138 L.Ed.2d 1049 (1997). Moreover, we distinguish the decision in *Ritter v. Smith,* 726 F.2d 1505 (11th Cir.1984), where the Eleventh Circuit determined that a ruling vacating a stay for one co-defendant, Mr. Evans, was not a ruling on the merits to be applied in the other co-defendant's habeas corpus proceedings. *Id.* at 1511–12. In fact, since Mr. Evans was executed as a result of the United States Supreme Court's order vacating his stay of execution, it appears the Court must have determined that Mr. Evans' petition was without merit.[7] We find that this decision is limited by its unusual facts, because the co-defendant was alleging similar habeas claims as Mr. Evans had in his petition. *Compare* Tr. 6/30/98 at 6–8.

Moreover, we reject Petitioner's argument that the United States Supreme Court has established a pattern and practice of either denying a stay of execution or vacating an existing stay of execution as merely a procedural mechanism. *See* Pet.'s Mem. at 15–16; Tr. 6/30/99 at 22–24. In the following cases cited by the Petitioner, *see, e.g., Darden v. Wainwright,* 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698, *cert. granted,* 473 U.S. 928, 106 S.Ct. 21, 87 L.Ed.2d 699 (1985); *Herrera v. Collins,* 502 U.S. 1085, 112 S.Ct. 1074, 117 L.Ed.2d 279, *cert. granted,* 502 U.S. 1085, 112 S.Ct. 1074, 117 L.Ed.2d 279 (1992), *reh'g,* 828 S.W.2d 8 (Tex.Crim.App.1992)(entered a stay of execution to solve the internal contradiction of the United States Supreme Court), it is clear that these cases are exceptional because the United States Supreme Court changed its mind *within the same day* to grant a petition for writ of certiorari and hear the case on the merits. In addition, while *Kyles v. Whitley,* 498 U.S. 931, 111 S.Ct. 333, 112 L.Ed.2d 298 (1990), *cert. granted,* 511 U.S. 1051, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994), is the closest case to support the Petitioner's

proposition, we simply view this as an anomaly, for the United States Supreme Court appears to have made a mistake when it initially denied the stay of execution. In the Court's decision on the merits, *see Kyles v, Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), there is no indication that it initially denied the stay of execution for any procedural reason and, in fact, the Court fails to even mention that it ever denied entering a stay of execution. While these particular cases certainly evidence that the United States Supreme Court has later ruled on the merits of a case where it had initially vacated a stay or denied to enter a stay, there is no indication that the Court did so for any intentional reason, such as fostering comity with the state courts. Rather, it appears that these are exceptional cases where the United States Supreme Court either changed its mind or, in the *Kyles* case, made an initial mistake in believing the petitioner's claim was without merit. For these reasons, we do not find that these cases lend support to Petitioner's contention that the United States Supreme Court vacated the stay of execution as a procedural mechanism to defer to proceedings in the Pennsylvania Supreme Court.

Finally, we believe if the United States Supreme Court had only vacated the stay for the purpose of deferring to state proceedings, it would have issued a temporary stay to that effect. For example, the Petitioner cites *Netherland v. Tuggle,* 515 U.S. 951, 116 S.Ct. 4, 132 L.Ed.2d 879, *cert. granted,* 515 U.S. 1188, 116 S.Ct. 38, 132 L.Ed.2d 918 (1995), in which the United States Supreme Court vacated the stay of execution, although it believed meritorious issues might exist in the case. Tr. 6/30/99 at 22–23. Because it realized the petitioner would be at risk of execution pending his application for further relief in the United States Supreme Court, the Court explicitly issued a temporary stay. *See*

---

**7.** Indeed, the United States Supreme Court vacated the stay on the basis that Mr. Evans' petition included issues conclusively resolved and rejected in prior proceedings. *See Ritter,* 726 F.2d at 1512.

*Netherland,* 515 U.S. at 951–52, 116 S.Ct. 4. We therefore believe if the United States Supreme Court had wanted to wait for the state court ruling in this case, it would have entered a temporary stay of execution pending the state court ruling, rather than run the risk of Mr. Heidnik's execution. In conclusion, we find that the United States Supreme Court's ruling vacating the stay of execution issued by this court implicitly denoted that Mr. Heidnik's execution could go forward. In light of this history, respectfully believe we are not bound by the Third Circuit's decision with respect to next friend standing.

Furthermore, even without the ruling of the United States Supreme Court, we question whether the Third Circuit decision on next friend standing was binding on the state courts of Pennsylvania in light of the fact that they never previously could consider the *Whitmore* issue. Before the Third Circuit decision, Petitioner had never alleged next friend standing before the state courts.[8] In fact, the Pennsylvania Supreme Court issued its stay of execution on April 19, 1997, on the express basis that it wanted the parties to file briefs addressing issues with respect to next friend standing under Pennsylvania law. *See In re Heidnik,* 554 Pa. 174, 720 A.2d 1015 (1997) ("*In re Heidnik I* "). The United States Supreme Court declined to vacate the stay of execution, and more than a year later the Pennsylvania Supreme

Court issued a decision recognizing next friend standing under its state jurisprudence. *See In re Heidnik II* at 1021. We find that the procedural history indicates that Petitioner was waiting for Pennsylvania Supreme Court to develop its jurisprudence on next friend standing so it could determine whether it could file post-conviction claims in the state courts on the basis of next friend standing. *See* Pet.'s Mem. at 30. When the Petitioner subsequently filed the habeas post-conviction claims in the Court of Common Pleas on September 18, 1998, Petitioner assumed the Pennsylvania Supreme Court decision of August 19, 1998 granted her standing.[9] *See* Pet. Habeas Corpus 9/18/98 at ¶¶ 12–13, 24, 26; *see also* Br. Next Friend Appellant 5/24/99 at 10; *compare* Pet.'s Mem. at 7, 30.[10] We find it curious, therefore, that the Petitioner now asserts the state courts in this case were foreclosed from ruling on next friend standing because of the earlier Third Circuit decision. Pet.'s Mem. at 24–28; Tr. 6/30/99 at 35–37. Indeed, if we were to find the Court of Common Pleas was wrong to determine *Whitmore* standing issues before it on September 18, 1998, because it was bound by the Third Circuit decision, it would appear to open the door for litigants to circumvent state courts and the policy requiring exhaustion by filing the standing issue first in federal court.

■ Moreover, the issue of next friend standing was properly before the Court of

---

**8.** The attorneys on behalf of Mr. Heidnik had originally filed in the Court of Common Pleas by claiming his execution would be unconstitutional under *Ford,* but had not filed under the status of next friend. The Supreme Court of Pennsylvania held it was appropriate for the Court of Common Pleas to hold a hearing under those circumstances. *In re Heidnik II,* 720 A.2d at 1021.

**9.** Petitioner presumed she had standing because the Pennsylvania Supreme Court in its August 19, 1999 decision stated that "the present Petition for Review filed by Maxine Davidson White as next friend is properly before the court for disposition." *See In re Heidnik II* at 1021. This phrase appears to indicate that the Pennsylvania Supreme Court has proper jurisdiction over the petition ap-

pealing the *Ford* competency determination as there were jurisdictional problems with the Court of Common Pleas' initial decision to accept the *Ford* application. *Id.* Otherwise, it seems illogical that the court would have found Mr. Heidnik competent to be executed under *Ford,* but incompetent to waive his right to appeal, requiring next friend status under *Whitmore.* It is also clear from subsequent proceedings in the state courts that the Petitioner was never granted next friend standing. *See, e.g., White,* slip op. at 4–5.

**10.** With the benefit of hindsight, Petitioner now seems to argue that the alleged Pennsylvania Supreme Court decision on next friend standing was not a determination, but merely an adoption of the Third Circuit decision.

Common Pleas because Petitioner was required to exhaust such standing issues before the state courts. An applicant filing a habeas petition must first exhaust all claims in the state courts under 28 U.S.C. § 2254(c), before requesting habeas relief in federal court. Since the petition filed in the Court of Common Pleas was the first formal request for habeas relief by the Petitioner,[11] we do not believe, as the Petitioner now argues, that the substantive post-conviction claims were the only claims that were subject to the exhaustion requirement. *See, e.g.,* Pet.'s Mem. at 28–29; Tr. 6/30/99 at 33–35. Furthermore, it is clear that until this habeas corpus petition was filed with the Court of Common Pleas, the next friend standing issue had never been decided by any state court. *See In re Heidnik II,* 720 A.2d at 1021; *compare* Tr. 6/30/99 at 34.[12]

Petitioner argues, however, that exhaustion of the standing issue is not required because there is a binding federal decision by the Third Circuit under *Whitmore* instigated by the *McFarland* petition filed with this court.[13] *See* Tr. 6/30/99 at 21, 24, 78. The procedural posture of this case is rather unique. We therefore question whether a federal decision on standing related to a habeas corpus claim can ever be binding on a state court which has not yet had a chance to decide its own jurisdiction to accept such a petition. Petitioner cites a plethora of cases enunciating the principle

that under the Supremacy Clause and the doctrine of "full faith and credit," *see* U.S. Const., art. IV, § 1; art. VI, a substantive issue once litigated in federal court is foreclosed from relitigation in state courts. *See* Pet.'s Mem. at 24–28; Tr. 6/30/99 at 36–38. However, all of the cited cases involve issues litigated *on the merits,* rather than litigation on the issue of jurisdiction. *See, e.g., Machesky v. Bizzell,* 414 F.2d 283, 291 (5th Cir.1969); *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 755 F.2d 38, 42 (3d Cir.1985); *Badgley v. Santacroce,* 800 F.2d 33, 38 (2d Cir.1986); *London v. City of Philadelphia,* 412 Pa. 496, 194 A.2d 901, 902–3 (1963); *U.S. ex rel. Lawrence v. Woods,* 432 F.2d 1072, 1076 (7th Cir.1970). In fact, in each of these cases, the federal court's jurisdiction was an undisputed issue. Here, since jurisdiction is the disputed issue, we find these cases inapplicable. Thus, we find that because Petitioner's habeas claims were first asserted in state court, she was properly required to exhaust the standing issue there as well.

Since we do believe that the next friend standing issue was properly before the Court of Common Pleas, we look to the proceedings of the state courts of Pennsylvania which have now made express findings about Mr. Heidnik's competency to waive further appeals under *Whitmore.*

11. When Petitioner initially filed in this court, she sought to proceed in forma pauperis, for the appointment of habeas counsel and for a stay of execution pursuant to 28 U.S.C. § 2251 under *McFarland.* In *McFarland,* the Court held that a stay pursuant to 28 U.S.C. § 2251 may be entered upon invoking the right to appointed counsel pursuant to 21 U.S.C. § 848(q)(4)(B), even before the filing of a formal legally sufficient habeas petition. 512 U.S. at 857, 114 S.Ct. 2568.

12. Besides the fact that it contradicts her own argument, Petitioner cannot now claim the issue of next friend standing was already exhausted by the state courts via the August 19, 1998 decision of the Pennsylvania Supreme Court. *See* Tr. 6/30/99 at 34. It is clear that

the Pennsylvania Supreme Court did not rule on the next friend standing issue. *See supra* note 8.

13. We also question whether the decision associated with the Petitioner's *McFarland* application is still in effect because the United States Supreme Court vacated the stay associated with that application. In addition, the record relating to the *McFarland* application, which the Third Circuit noted was incomplete, was never supplemented by the Petitioner after the Third Circuit ruling. *See In re Heidnik III* at 112–13. Nor did Petitioner seek clarification from the federal courts after the Supreme Court ruling as to whether she would be required to exhaust the issue of next friend standing before the state courts.

*See* Tr. 4/27/99 at 36–41; *White,* slip op. at 10–13.

■■■ In a proceeding instituted by an application for writ of habeas corpus, factual findings are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). When a state court has held a competency hearing, the United States Supreme Court has instructed that "a state court's conclusion regarding a defendant's competency is entitled to such a presumption." *Demosthenes,* 495 U.S. at 734, 110 S.Ct. 2223 (applying the presumption from the former 28 U.S.C. § 2254(d)); *see also Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (applying § 2254(d)); *cf. Marshall v. Lonberger,* 459 U.S. 422, 434–35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (applying presumption of § 2254(d) to state court's finding of credibility). Even in the absence of an express finding of competence by the state courts, a defendant who alleges insanity in his habeas corpus petition may be presumed to be competent, since the trial court judge would not have otherwise allowed the trial to proceed. *See Ford,* 477 U.S. at 425–26, 106 S.Ct. 2595 (Powell, J., concurring). Thus, we find that the state court's finding that Mr. Heidnik is competent under the standard elucidated in *Whitmore* is entitled to a presumption of correctness.

Moreover, we find that the state courts were not wrong to proceed to examine Mr. Heidnik's competency based on the assumption that the Third Circuit's decision is not final. In fact, we have reason to believe that the Third Circuit did not in-tend to preclude further determinations in the state courts with respect to the *Whitmore* competency because it noted throughout its opinion that the competency findings were incomplete rather than incorrect. Doing so, it acknowledged that the state could conduct full and complete proceedings on Mr. Heidnik's competency for next friend status, and thereby complete the record.[14]

For instance, the Third Circuit noted "it may be that the evidence would support a finding that Mr. Heidnik could make some or other decision regarding waiver of further appeals...." *In re Heidnik III,* 112 F.3d at 111. Also, it did not hold that Mr. Heidnik has not made a rational decision to die, but merely that "*the record does not support* a rational explanation as to why ... he could ... make a rational decision to die." *Id.* at 112 (emphasis added). The opinion continues, "[a] psychiatric expert might have supplied this...." *Id.* It is apparent that the Third Circuit did not find that the competency determination of Mr. Heidnik was complete, but believed further factual inquiry might resolve the issue.

The Third Circuit clearly was concerned that the evidence before it was legally insufficient in light of the fact that Dr. O'Brien, the only expert who found Mr. Heidnik to be competent to waive his appeals, did not address the issue of rationality. Holding that "rationality" is a requirement for valid waiver, the court refused to find Mr. Heidnik competent

---

14. We note that the Third Circuit recognized that if the state court had already made findings as to the competency of Mr. Heidnik under *Whitmore,* it would have been compelled to presume the correctness of those state court findings pursuant to 28 U.S.C. § 2254(e)(1). *See In re Heidnik III,* 112 F.3d at 112 n. 7. However, under the exigent circumstances of the appeal, the Third Circuit was merely required to review our determination of competency for error since there was never a formal "application for a writ of habeas corpus" before the federal courts. *See Id.* at 111–12; 28 U.S.C. § 2254(e)(1).

The Third Circuit did suggest, however, that it had applied the presumption of 28 U.S.C. § 2254(e)(1) in reviewing the *Ford* competency determination of the Court of Common Pleas; however, under the time pressure that the Third Circuit faced, it is not surprising that they wrote very little on their review of that record. *See In re Heidnik III* at 112 n. 7.; *see also* Pet.'s Letter 7/2/99 at 2. Moreover, the Third Circuit apparently questioned the status of those findings because an appeal was pending in the Pennsylvania Supreme Court at that time. *Id.*

without testimony that his waiver was the result of a rational decision.

In order to complete the record, the state conducted extensive hearings on *Whitmore* competency, including whether or not Mr. Heidnik could make a rational decision to die. As anticipated by the Third Circuit, psychiatric experts did in fact supply support for a rational explanation as to why Mr. Heidnik could make a rational decision to die.[15] We find that the *Whitmore* competency proceedings in state court comport with the Third Circuit's tacit invitation to develop a more comprehensive record to allow appropriate findings.

In light of the subsequent proceedings in this case after the Third Circuit decision, we find that Ms. White does not have next friend standing on behalf of Mr. Heidnik.

## B. The Competency Hearing in the Court of Common Pleas

As we have discussed extensively above, the Third Circuit decision does not control the determination of whether Mr. Heidnik is competent to waive appeals and capable of making a knowing, voluntary, intelligent and rational decision to do so. Instead, we look to the determination of competency made by the Court of Common Pleas and affirmed by the Supreme Court of Pennsylvania.

Since we are considering the issue of Mr. Heidnik's competency as part of the Petitioner's application for habeas relief, the state court's factual determinations are presumed correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness can be overcome only by clear and convincing evidence. *Id.* The evi-

dence must demonstrate either that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or that it "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)-(2). The state court determination of a defendant's competency is entitled to the statutory presumption of correctness. *See Demosthenes*, 495 U.S. at 736, 110 S.Ct. 2223; *Miller v. Fenton,* 474 U.S. 104, 113, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). In accordance with this statute, we will examine the competency proceeding that was conducted by the Court of Common Pleas in 1999.[16]

### 1. Record Supports Competency Determination

Petitioner has argued that the state decision was founded on an unreasonable factual determination under 28 U.S.C. § 2254(d)(2). To effectively demonstrate error, the Petitioner has the burden of showing by clear and convincing evidence that the state decision was based on an incorrect interpretation of the facts. In the case at bar, Petitioner would have to show by clear and convincing evidence that she had provided an adequate explanation as to why Mr. Heidnik is unable to appear on his own behalf to prosecute the action. *See Whitmore*, 495 U.S. at 162, 110 S.Ct. 1717.

*Whitmore* requires "a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity." *Id.* at 165, 110 S.Ct. 1717. The United States Supreme Court has held that the competency standard for standing trial is

---

15. *See* discussion below, III.B.1.

16. We note that Petitioner argues that we should review state court findings *de novo*, on the basis that an unfair proceeding in state court does not merit the presumption of correctness under 28 U.S.C. § 2254(e)(1). *See* Pet.'s Mem. at 32–34. Petitioner's argument directly contravenes the plain language of 28 U.S.C. § 2254(e)(1). Furthermore, an applicant can challenge state court findings as

being unfair by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). We find no basis, however, for the claim that the factual determinations from an unfair state court proceeding should be reviewed *de novo*. The specific challenges raised by the Petitioner with respect to fairness of the state proceedings are addressed in Section III.C.2, below.

"whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and a 'rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

While the focus of a competency inquiry is whether defendant has the ability to understand the proceedings, the purpose of the "knowing and voluntary" inquiry is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is not coerced. *Godinez*, at 401 n. 12, 113 S.Ct. 2680 (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). These determinations do not hinge on the use of certain words, but require the fact-finder to make an effort to understand whether the defendant is capable of making and has made a rational decision to forego appeals.

The Petitioner argues that "Mr. Heidnik's delusions render him incapable of consulting with his lawyer with any reasonable degree of rational understanding and that he does not have a rational understanding of the proceedings." Pet.'s Mem. at 20. She argues that neither Dr. O'Brien nor Dr. Sadoff gave testimony addressing Mr. Heidnik's ability to rationally assist himself in the legal process. However, we note that the Court of Common Pleas, after the evidentiary hearing as to Mr. Heidnik's competency in order to determine next friend standing, found otherwise, and with reasonable justification.

Petitioner also claims that Dr. O'Brien could not explain how Mr. Heidnik's desire for execution has a rational basis, but we find this claim to be unsupported by the record. Dr. O'Brien and Dr. Sadoff both cogently explained Mr. Heidnik's belief that his execution might initiate a process that ultimately abolishes the death penalty as rational, given his understanding that the United Kingdom abolished the death penalty after the execution of an innocent person.

Finally, Petitioner attempts to discredit Dr. O'Brien's testimony on the basis that the witness did not conclude that Mr. Heidnik is a paranoid schizophrenic. Pet.'s Mem. at 22. However, we note that Dr. O'Brien explained in his testimony that a diagnosis of Mr. Heidnik as schizophrenic would not bear on the determination of competency or rational decision-making. Dr. Sadoff, who accepted a diagnosis of paranoid schizophrenia, concurred that paranoid schizophrenia was not incompatible with a conclusion of competency.

In addition to considering Petitioner's arguments, we have chosen to review the record and ascertain whether there is any clear and convincing evidence that the state court determination was based on an unreasonable determination of the facts. Although section 2254(e)(1) requires the Petitioner to refute the presumptive correctness of the state court's findings, we find that the record merits review due to the serious nature of the present litigation. Our independent review of the record of the state court proceedings does not persuade us that the state was erroneous in holding that Petitioner failed to prove Mr. Heidnik's incompetence and that he has not knowingly, intelligently and voluntarily waived his right to proceed.

The court made its Findings of Fact and Conclusions of Law on April 27, 1999, denying Ms. White standing as next friend. Based on its judgment of the credibility and testimony of the expert psychiatrists, including the individual reports submitted by each of the four doctors, we believe that the court was correct in determining that Mr. Heidnik is competent to waive further appeals, and that his decision to do so is voluntary, intelligent, knowing and rational. *See* Tr. 4/27/99 at 36–40.

The court properly credited Dr. O'Brien's evaluation and findings.[17] First, it noted Dr. O'Brien's determination of Mr. Heidnik's competence to make a knowing, intelligent and voluntary decision. *Id.* at 2–265. Also, the court explained that Mr. Heidnik's decision not to pursue appeals was not irrational because, according to Dr. O'Brien, "he thought [his death] would begin a process that would somehow ... prove that he is ... innocent, that somehow capital punishment would be done away with." *Id.* at 27. This rational belief was informed by Mr. Heidnik's awareness that capital punishment was abolished in the United Kingdom after the execution of an innocent person. *Id.; see also* Tr. 3/1/99 at 38–40. Furthermore, it was not unreasonable for the court to accept Dr. O'Brien's explanation of why "the diagnosis of paranoid schizophrenia does not negate the defendant's ability to make rational choices regarding further appeals." Tr. 4/27/99 at 29.

The court also appropriately gave weight to Dr. Sadoff's testimony that Mr. Heidnik is competent, and that his decision to forego further appeals is voluntary, knowing, intelligent and rational. *Id.* at 29. Dr. Sadoff concluded that Mr. Heidnik is not psychotic, and that his paranoid schizophrenia, including unrelated delusions, does not mean he is incompetent. *Id.* at 30–31. Furthermore, we believe that the court properly credited Dr. Sadoff's testimony, similar to that of Dr. O'Brien, that "defendant's belief that his execution could lead to the abolition of the capital punishment is ... based on his knowledge of a case from the United Kingdom where the execution of an innocent person ... led to abolition of a death penalty." *Id.* at 30. The court concluded that, because "[d]efendant bases his hopes on an actual case rendered ... the hope ... is, in fact, a rational hope." *Id.* at 31.

The court also weighed testimony by the defense experts. The court noted that Dr. Bernstein "conceded that Dr. O'Brien was in position to render an opinion based on [the] evaluation." *Id.* at 32. Furthermore, Dr. Bernstein's opinion that the Defendant was incapable of understanding the proceedings and rationally assisting in his own defense was based on previous diagnoses unrelated to any competency proceedings and made on occasions when the defendant refused to speak with him. But for those diagnoses "he would have agreed ... that the defendant's assertion of innocence was a rationalization." *Id.* at 33. The second defense expert, Dr. Blumberg, found the Defendant to be delusional during the January 29th evaluation. He characterized Mr. Heidnik's belief that his execution will end capital punishment as a delusion, and therefore irrational. *Id.* at 34. At the same time, it appears that Dr. Blumberg essentially agreed with Drs. O'Brien and Sadoff that Mr. Heidnik understands the legal consequences of taking no further action. *Id.* at 35.

We find on the basis of the evidence before the court that it was not unreasonable for the court to disagree with Dr. Bernstein's conclusion that Defendant's goal of ending the death penalty was psychotic. *See Id.* at 38. Nor do we find the court's disagreement with Dr. Blumberg's opinion that the Defendant was delusional at that time to be unreasonable in light of the testimony by Drs. O'Brien and Sadoff. *Id.* at 38.

Finally, the court correctly took into account "defendant's testimony that he wishes no further challenges to the carrying out of his execution." *Id.* at 39. The court, which had the benefit of observing Mr. Heidnik testify, determined "that defendant's desire is genuine, knowing and intelligent. It is a voluntary and rational

---

17. We note that the court was impressed by Dr. O'Brien's qualifications, including his background as a medical doctor and attorney and his experience as a court psychiatrist in the criminal justice system. With the benefit

of observing Dr. O'Brien, it found him "receptive to all questions on both sides and open in his responses," and determined that his opinions were objective. Tr. 4/27/99 at 36–37.

decision." *Id.* We find, therefore, the court's conclusion that Defendant is "competent in all regards for the purpose of the next-friend litigation" is supported by the record. *Id.* at 40.

Not only do we believe, upon reviewing the record, that the court's determination is sound, but we value the observation of the court because we do not have the benefit of observing the expert witnesses and experiencing their testimony first-hand. Furthermore, the Court of Common Pleas had the opportunity to observe Mr. Heidnik and to question him regarding his choice not to pursue representation by counsel. *See* Tr. 4/27/99 at 24.

Based on the foregoing, we find that Ms. White has not demonstrated the conclusion of the Court of Common Pleas to be erroneous. There is more than adequate evidence to support the court's findings and conclusions that the Petitioner failed to prove Mr. Heidnik's incompetence and that Mr. Heidnik has knowingly, voluntarily and intelligently waived his right to proceed. Ms. White is therefore not entitled to "next friend" standing. *See Whitmore*, 495 U.S. at 149, 110 S.Ct. 1717.

### 2. *Competency Determination Is Not Inherently Suspect*

Petitioner argues that "this Court cannot presume the state court's factual determinations to be correct" because the state court proceedings were inherently unfair and erroneous. Pet.'s Mem. at 32–33. Specifically, Petitioner claims that the findings of the Court of Common Pleas are "inherently suspect," alleging that: (1) Judge Poserina had and relied on inappropriate off-the-record conversations with his daughter, a psychiatrist, and other doctors; (2) Dr. O'Brien is a biased expert whose testimony was improperly used as that of a court witness; (3) the Commonwealth experts did not employ the appropriate legal standard for competency; and (4) the waiver colloquy was "grossly defective." Pet.'s Mem. at 33.

As we explained above, the federal habeas corpus statute accords state court determinations of fact a presumption of correctness. 28 U.S.C. § 2254(e)(1). This presumption can be overcome only by clear and convincing evidence that the decision below "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence before it." *Id.* at § 2254(d)-(e)(1). Addressing Petitioner's allegations, we find that she has failed in each instance to present clear and convincing evidence that the statutory presumption of correctness has no application to the state proceedings. We conclude, therefore, that her claim that she was denied a full and fair hearing has no merit.

First, Petitioner urges that we find error based on Judge Poserina's statement that "in evaluating the testimony here, I was educated a little bit by just off-the-record conversations with not only my daughter but other doctors, and *I have come to independent judgments based on the record.*" Tr. 4/27/99 at 41–42 (emphasis added). We concur with the Pennsylvania Supreme Court that the judge clearly "states that he came to an independent judgment regarding Mr. Heidnik's competency." *White*, slip op. at 7. We agree that these conversations "took place prior to the commencement of the instant case, and were completely unrelated to the matter at hand." *Id.*

We also disagree with Petitioner that Judge Poserina's comment that he was "educated a little bit by just off-the-record conversations" indicated those conversations occurred during the course of the proceedings before him. The judge may well have meant he was educated by conversations in years past, and nothing in his comment suggests the contrary. Whatever the motivation for the comment, it is irrelevant to the extent that we find he arrived at an independent judgment on the basis of his "experience and capacity to correctly decide." Tr. 4/27/99 at 41–42.

As the Pennsylvania Supreme Court noted, judges bring to the bench general knowledge that they use in the course of their determinations. *White*, slip op. at 7.

Petitioner claims next that the court "violated fundamental norms of due process and a fair and impartial hearing" by appointing Dr. O'Brien as a court expert for the 1999 hearing and relying on his testimony. This claim is premised on the argument that Dr. O'Brien testified as a Commonwealth witness during the 1997 hearing before this court, and was thereafter a biased witness. Pet.'s Mem. at 41. Petitioner also alleges that the Commonwealth misrepresented Dr. O'Brien's role in the federal proceedings, and that the court relied on this misrepresentation. *Id.* at 41–42. We disagree that the court's reliance on Dr. O'Brien's testimony amounts to a violation of due process.

Dr. O'Brien was the state court's expert during the 1997 competency proceedings. In the April 1997 proceedings before this court, the Commonwealth allegedly consulted Dr. O'Brien on its cross-examination of Petitioner's experts, and we heard testimony from Dr. O'Brien that assisted us in our ruling. However, Dr. O'Brien's role before this court in 1997, even including his limited assistance to the state, is not a sufficient basis to conclude that he is a biased witness on behalf of the Commonwealth. This is true particularly in light of his singular knowledge of Mr. Heidnik.[18]

Again, given Dr. O'Brien's unique qualifications for this case, and after examining his lengthy and measured testimony before Judge Poserina, we agree with the Pennsylvania Supreme Court that no abuse of discretion occurred that violated due process. Nor does the record support Petitioner's contention that the Commonwealth misrepresented Dr. O'Brien's role

before us or that any such misrepresentation bore on the Judge's independent determination that Dr. O'Brien was a valuable and credible court witness.

Unsurprisingly, Petitioner finds fault with the Pennsylvania Supreme Court's review of these claims concerning Dr. O'Brien. Pet.'s Mem. at 48. However, that court relied, as we do, on Judge Poserina's ability as a fact finder to deduce the credibility and bias of each witness before him. To do so was not an abuse of discretion.

Petitioner's third basis for arguing that we should revisit the issue of Mr. Heidnik's competency is that Dr. O'Brien and Dr. Sadoff did not apply the correct legal standard under *Whitmore*. Pet.'s Mem. at 49. This claim hinges on the fact that neither Dr. O'Brien nor Dr. Sadoff directly stated that Mr. Heidnik was able to consult with counsel. Petitioner further avers that neither of those experts provided a "rational explanation as to why . . . he could, despite his delusions, make a rational decision to die." *Id.* at 49 (quoting *In re Heidnik III* at 112).

We have already discussed at length that the state court could properly find on the basis of the testimony before it that Mr. Heidnik's decision is . rational. We reiterate that the experts' testimony clearly and repeatedly addressed the question of Mr. Heidnik's competence to litigate his own cause and his ability to make a rational, knowing, intelligent and voluntary decision to waive his appeals. Whether or not the experts used a specific word or phrase about consulting with counsel is immaterial to the substance of the testimony, which established that Mr. Heidnik was able to consult with counsel. Petitioner's argument appears to be an attempted avoid-

---

18. Dr. O'Brien, as we have stated previously, was the court's expert who evaluated Mr. Heidnik for the purposes of the 1997 competency determination under *Ford*. This background proved valuable in the course of the most recent evaluation for purposes of determining, among other things, whether Mr. He-

idnik's condition had changed. Also, Dr. O'Brien's many years of experience in the criminal system and his background as both attorney and medical doctor qualified him as a valuable witness to assist the state court in its findings.

ance of the requirement of clear and convincing evidence that the court's findings were erroneous.

Similarly, we find Petitioner's claim of "rubber-stamping" by the Court of Common Pleas to be without merit. Pet.'s Mem. at 56. According to Petitioner, the judge's oral findings were a regurgitation of the state's written proposed findings. We find, from our examination of the record, that the court properly made its own determinations on the basis of the credence it accorded the different expert testimonies.

Furthermore, as Petitioner points out, the Pennsylvania Supreme Court is clearly willing to find that a lower court has engaged in rubber-stamping of an advocate's arguments. Petitioner cites to a case in which the Pennsylvania Supreme Court found "wholesale adoption by the post-conviction court of an advocate's brief." Pet.'s Mem. at 57 (quoting *Commonwealth v. Williams*, —— Pa. ——, 732 A.2d 1167 (1999)). We find highly persuasive that the court did not reach the same conclusion in this case, despite its willingness to do so where appropriate. *See id.*

Petitioner's penultimate claim is that the state court conducted a defective waiver colloquy, and that Mr. Heidnik's waiver of his right to pursue post-conviction appeals was not voluntary, knowing, and intelligent. However, the Court of Common Pleas determined that Mr. Heidnik's waiver satisfied the *Whitmore* test—that he was not only competent to waive further appeals, but that his actual decision to waive was voluntary, knowing, and intelligent. Having determined this, any additional colloquy would have been purely redundant, for its purpose would have been to establish exactly what the court had already ascertained.

Finally, Petitioner argues that Judge Poserina should have recused himself from the proceedings before him. Pet.'s Mem. at 68. The burden is on Petitioner to demonstrate that the Judge abused his discretion in denying the recusal motion, and she has not done so. We have already noted that our examination of the record persuades us that the proceedings before Judge Poserina were fair and impartial. Even without addressing Petitioner's claims of bias shown by the Judge in other proceedings, we find no evidence of bias in the record of this case. Judge Poserina properly refused to recuse himself, and the Pennsylvania Supreme Court appropriately upheld that decision. We find, therefore, that Petitioner has not refuted with clear and convincing evidence that the findings of the state court were erroneous.

## IV. CONCLUSION

After careful consideration to the arguments presented to us, we find that the Petitioner has failed to establish next friend standing on behalf of Mr. Heidnik. We believe that Mr. Heidnik has given a knowing, intelligent and voluntary waiver of his right to prosecute his own case. As standing is a threshold determination, we are constrained to find that the Petitioner is not entitled to stay of execution. Nor can we reach the merits of the Petitioner's habeas corpus claims filed on behalf of Mr. Heidnik. An appropriate order follows.

## ORDER

AND NOW, this 3rd day of July, 1999, for reasons stated in the foregoing memorandum it is hereby ordered as follows:

1. The Application for Stay of Execution filed on Monday, June 28, 1999, is hereby DENIED.

2. The Petition for Writ of Habeas Corpus filed on Monday, June 28, 1999, is hereby DISMISSED. We do not believe that Petitioner has standing to bring an action as next friend to Gary Heidnik.

3. The Application for Stay of Execution is deemed to also be an application for a certificate of appealability which is also DENIED. We do not believe that the Petitioner has made a substantial showing of the denial

of a constitutional right under 28 U.S.C. § 2253(c)(2).